UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
*Tampa Division*

In re:                                     Chapter 11

ALPHAROCK LLC, et. al.,                    Case No. 8:09-bk-11888-CPM

      Debtors.                             (Jointly Administered with cases 8:09-bk-
                                           11891; 8:09-bk-11892; 8:09-bk-11894;
                                           8:09-bk-11897; 8:09-bk-11899; 8:09-bk-
                                           11900; 8:09-bk-11902 through 8:09-bk-
                                           11908; 8:09-bk-11910; 8:09-bk-11912;
                                           8:09-bk-11914 through 8:09-bk-11920)

_____/

# SECOND AMENDED AND RESTATED JOINT PLAN OF REORGANIZATION FOR ALPHAROCK LLC AND ITS WHOLLY-OWNED SUBSIDIARIES

Edward J. Peterson, III (FBN 0014612)
Amy Denton Harris (FBN 0634506)
**STICHTER, RIEDEL, BLAIN & PROSSER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
**EMAIL: EPETERSON@SRBP.COM
AHARRIS@SRBP.COM**
**ATTORNEYS FOR DEBTORS**

Tampa, Florida
December 22, 2009

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THIS PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED IN THIS PLAN) HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF IMPAIRED CLAIMS AGAINST AND IMPAIRED MEMBERSHIP INTERESTS IN THE DEBTORS ENTITLED TO VOTE ON THIS PLAN. THE PROPONENTS RESERVE THE RIGHT TO FILE AN AMENDED OR AMENDED AND RESTATED PLAN AND DISCLOSURE STATEMENT FROM TIME TO TIME.  REFERENCE IS MADE TO THE DISCLOSURE STATEMENT FOR A DISCUSSION OF VOTING INSTRUCTIONS, THE DEBTORS' HISTORY, BUSINESSES, PROPERTIES, AND RESULTS OF OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASES, AND THE MEANS OF FUNDING THIS PLAN.  ALL HOLDERS OF CLAIMS AND MEMBERSHIP INTERESTS ARE ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THIS PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS PLAN AND THE DISCLOSURE STATEMENT WILL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## INDEX OF EXHIBITS TO PLAN

EXHIBIT A          Executory Contracts and Unexpired Leases to be Assumed

# INTRODUCTION

AlphaRock LLC ("**AlphaRock**") and its wholly-owned subsidiaries, Alpha CML LLC, Alpha 300952 LLC, Alpha 301419 LLC, Alpha 330453 LLC, Alpha 331290 LLC, Alpha 332002 LLC, Alpha 332003 LLC, Alpha 335407 LLC, Alpha 340986 LLC, Alpha 341164 LLC, Alpha 341222 LLC, Alpha 340479 LLC, Alpha 341223 LLC, Alpha 341938 LLC, Alpha 341948 LLC, Alpha 343785 LLC, Alpha 344058 LLC, Alpha 344304 LLC, Alpha 344768 LLC, Alpha 344825 LLC, Alpha 345156 LLC, and Alpha 346802 LLC, the Debtors and Debtors in Possession in these Reorganization Cases (collectively, the "**Debtors**"), propose this Second Amended and Restated Joint Plan of Reorganization (the "**Plan**," as more particularly defined below) pursuant to the provisions of Chapter 11 of the Bankruptcy Code and request Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. This Plan refers to the Debtors' Second Amended and Restated Joint Disclosure Statement (the "**Disclosure Statement**"), distributed contemporaneously with the Plan, for (a) a discussion of the Debtors' history, businesses, properties, and results of operations; (b) a summary of significant events which have occurred to date in these Reorganization Cases; (c) a summary of the means of funding the Plan; and (d) the procedures for voting on the Plan. All Holders of Claims against and Membership Interests in the Debtors entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

No materials other than the Disclosure Statement and any exhibits and schedules attached to or referenced in the Disclosure Statement have been approved by the Bankruptcy Court or the Proponents for use in soliciting acceptances or rejections of the Plan.

NOTWITHSTANDING ANYTHING IN THIS PLAN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THIS PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTORS' BUSINESSES, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTORS, TRANSACTIONS TO WHICH THE DEBTORS WERE OR ARE A PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON SECURED CREDITORS, UNSECURED CREDITORS, OR HOLDERS OF MEMBERSHIP INTERESTS ARE ATTRIBUTABLE EXCLUSIVELY TO THE DEBTORS AND NOT TO ANY OTHER PARTY.

# Article 1
## DEFINED TERMS

As used in the Plan, the following terms, which appear in this Plan as capitalized terms, will have the meanings set forth below:

**1.01** ***"Administrative Expense"*** means—

    (a)    any cost or expense of administration of the Reorganization Cases that is allowed under Section 503(b) or 507(a)(1) of the Bankruptcy Code, to the extent the party claiming any such Administrative Expense files an application or other Bankruptcy Court-approved pleading seeking such expense in the Reorganization Cases on or before the applicable Administrative Expense Claims Bar Date, including—

    (1)    any actual and necessary costs and expenses of preserving the Estates or operating the businesses of the Debtors (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date;

    (2)    any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtors in Possession in the ordinary course of their businesses;

    (3)    any payment required to be made to cure a default under an Assumed Contract, including any Cure Claim, to the extent allowed by a Final Order of the Bankruptcy Court;

    (4)    any Claim granted administrative-expense priority status by a Final Order of the Bankruptcy Court;

    (5)    any Claim by a Governmental Authority for non-ad valorem taxes that are assessed *in personam* (and for interest and/or penalties related to such taxes) for any tax year or period, to the extent such Claim accrues Postpetition; and

    (6)    compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court);

    (b)    any superpriority Claim;

    (c)    all fees and charges assessed against the Estates under Chapter 123 of

Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and

> (d)     any and all other costs or expenses of administration of the Reorganization Cases that are allowed by Final Order of the Bankruptcy Court.

The terms "Administrative Expense" and "Administrative Expense Claim" do not include any Priority Tax Claim, any Secured Claim premised upon ad valorem taxes, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims designated in Classes under the Plan.

**1.02**     *"Administrative Expense Claim"* means any Claim for the payment of an Administrative Expense.    The terms "Administrative Expense(s)," "Administrative Claim(s)," and "Administrative Expense Claim(s)" are used interchangeably in this Plan.

**1.03**     *"Administrative Expense Bar Date"* means, subject to §3.04 of this Plan, the date ordered by the Bankruptcy Court or the date established by the Bankruptcy Rules as the last day for filing an application or other Bankruptcy Court-approved pleading for an Administrative Expense.  In the case of an Administrative Expense deemed to arise after the date ordered by the Court or established by the Bankruptcy Rules, the Administrative Expense Bar Date will be the Confirmation Date.   Notwithstanding the foregoing, all Professionals must file final fee applications on or before the date that is thirty (30) days after the Effective Date.

**1.04**     *"Affiliate"* has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**1.05**     *"Allowed Amount"* means the dollar amount in which a Claim is Allowed.

**1.06**     *"Allowed Claim"* means a Claim or that portion of a Claim that is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date, or, by order of the Bankruptcy Court, was not required to be filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date, but which has been or hereafter is listed by the Debtors in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) or (b) above, as to which either (x) no objection to the allowance thereof has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (y) any objection made has been determined and the Claim has been allowed by a Final Order (but only to the extent so allowed).  "Allowed Claim" will also include a Claim that is allowed by the Bankruptcy Court (a) in any contract, instrument, or other agreement or document entered into in connection with the Plan; (b) in a Final Order; or (c) pursuant to the terms of the Plan. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

**1.07** *"Allowed Class ... Claim"* means an Allowed Claim in the particular Class(es) or categories described.

**1.08** *"Alpha Membership Interests"* mean all membership interests in the AlphaRock LLC and any and all rights to subscribe to or convert into membership interests of AlphaRock LLC.

**1.09** *"Annual Cash Flow"* means the cash flow remaining after payment of necessary expenditures as set forth in the projections attached as Exhibit A to the Disclosure Statement, subject to the provisions of Article 8.07 of the Plan.

**1.10** *"Excess Annual Cash Flow"* means Annual Cash Flow in excess of $300,000.

**1.11** *"Assumed Contract"* means any Prepetition executory contract or unexpired real or personal property lease assumed by the Debtors during the Reorganization Cases pursuant to a Final Order of the Bankruptcy Court.

**1.12** *"Bakery"* means Alpha CML LLC which operates a bakery that provides baked goods for the Debtors' Dunkin' Donuts outlets as well as approximately seventeen (17) outlets owned by other franchisees and is located in a portion of the premises located at 5275 Duncan Road, Highway 17, Punta Gorda, FL 33982.

**1.13** *"Ballot"* means the ballot accompanying the Disclosure Statement upon which Holders of Impaired Claims or Impaired Membership Interests entitled to vote on the Plan will indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

**1.14** *"Bankruptcy Code"* means Title 11 of the United States Code (11 U.S.C. §§101 *et seq.*), as in effect on the Petition Date, together with all amendments and modifications to the Code that were subsequently made applicable to the Reorganization Cases.

**1.15** *"Bankruptcy Counsel"* means Stichter, Riedel, Blain & Prosser, P.A., of Tampa, Florida, in its Bankruptcy Court-approved capacity as Chapter 11 bankruptcy counsel to the Debtors.

**1.16** *"Bankruptcy Court"* means the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Reorganization Cases.

**1.17** *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (M.D. Fla. L.B.R.), as in effect on the Petition Date, together with all amendments and modifications to the Rules that were subsequently made applicable to the Reorganization Cases.

**1.18** *"Bar Date"* means the bar date(s) established by the Bankruptcy Court from time to time as the last day for filing Proofs of Claim against, or proofs of Equity Interest in, the Debtors, including with respect to executory contracts and unexpired leases that are rejected pursuant to the Plan, pursuant to a Final Order of the Bankruptcy Court or otherwise pursuant to Section 365 of the Bankruptcy Code; provided, however, that, when used in the Plan, the term "Bar Date" will not include the Administrative Expense Claims Bar Date.

**1.19** *"Bar Date Order"* means, as the context may require, either (a) the order entered by the Bankruptcy Court establishing a Bar Date, or (b) the applicable order entered by the Bankruptcy Court establishing an Administrative Expense Claims Bar Date.

**1.20** *"Baskin-Robbins"* means Baskin-Robbins Franchising, LLC.

**1.21** *"Business Day"* means any day other than a Saturday, Sunday, "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or day on which weather or other conditions have made the Clerk's office inaccessible.

**1.22** *"Cash"* means cash, cash equivalents, and other readily marketable direct obligations of the United States of America, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a distribution under the Plan, the term "Cash" means lawful currency of the United States of America, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtors drawn on a domestic bank.

**1.23** *"Causes of Action"* means any and all of the Estates' and the Debtors' actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, including all avoidance actions and rights to recover transfers voidable or recoverable under Sections 502, 542, 543, 544, 545, 547, 548, 549, 550, 551, and/or 553 of the Bankruptcy Code, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including claims of the type referred to in the Disclosure Statement; provided, however, that, when used in the Plan, the term "Causes of Action" does not include any Claims, obligations, suits, judgments, damages, rights, remedies, Causes of Action, charges, costs, Debts, indebtedness, or Liabilities released or waived pursuant to Article 7 of the Plan or by order of the Bankruptcy Court. When used in the Plan, the term "Causes of Action" will also specifically include any claims, demands, rights, and causes of action that may only be asserted by a Person other than the Debtors (including the Holder of a Claim or Equity Interest) on a derivative or other basis. Some of the Causes of Action are described in further detail in the

Disclosure Statement. A Cause of Action will not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan or the Disclosure Statement. The Reorganized Debtors will not be estopped or precluded under any theory from pursuing the Causes of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

**1.24** *"CIT"* means The CIT Group/Equipment Financing, Inc.

**1.25** *"Claim"* has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Claim" will be given the broadest possible meaning permitted by applicable law and will include all manner and type of claim, whenever and wherever such claim may arise, including Environmental Claims and Tort Claims. As used in the Plan, the term "Claim" also includes a Claim against any Affiliate or Subsidiary, the Holder of which holds or believes it holds a Claim against any of the Debtors arising from or related to the same or similar facts and circumstances surrounding the claim against the Affiliate or Subsidiary.

**1.26** *"Class"* means a category of Claims or Membership Interests classified together as described in the Plan.

**1.27** *"Clerk"* means the Clerk of the Bankruptcy Court.

**1.28** *"Code"* means the Bankruptcy Code.

**1.29** *"Compensation Claim"* means any Claim under Section 330(a), 331, 503, or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Reorganization Cases.

**1.30** *"Confirmation"* or *"Confirmation of the Plan"* means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

**1.31** *"Confirmation Date"* means the date on which the Confirmation Order is entered on the Docket pursuant to Bankruptcy Rule 5003(a).

**1.32** *"Confirmation Hearing"* means the hearing(s) which will be held before the Bankruptcy Court pursuant to Section 1128(a) of the Bankruptcy Code in which the Debtors will seek Confirmation of the Plan, as may be continued from time to time.

**1.33** *"Confirmation Order"* means the order of the Bankruptcy Court in the Reorganization Cases confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, which order will be in form and substance reasonably satisfactory to the Debtors, and will include any amendments, supplements or modifications thereto made with the consent of the Debtors.

**1.34** *"Creditor"* means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Creditors with Administrative Expenses, Priority Tax Claims, Priority Claims, Secured Claims, and Unsecured Claims.

**1.35** *"Cure Claim"* means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtors pursuant to Section 365(b) of the Bankruptcy Code or otherwise, and any Claim for a default (monetary or nonmonetary) arising from, relating to, or in connection with the assumption by the Debtors of any Assumed Contract.

**1.36** *"Debt"* has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**1.37** *"Debtors"* means AlphaRock LLC and its wholly-owned subsidiaries, Alpha CML LLC, Alpha 300952 LLC, Alpha 301419 LLC, Alpha 330453 LLC, Alpha 331290 LLC, Alpha 332002 LLC, Alpha 332003 LLC, Alpha 335407 LLC, Alpha 340986 LLC, Alpha 341164 LLC, Alpha 341222 LLC, Alpha 340479 LLC, Alpha 341223 LLC, Alpha 341938 LLC, Alpha 341948 LLC, Alpha 343785 LLC, Alpha 344058 LLC, Alpha 344304 LLC, Alpha 344768 LLC, Alpha 344825 LLC, Alpha 345156 LLC, and Alpha 346802 LLC.

**1.38** *"Debtors in Possession"* means AlphaRock LLC and its wholly-owned subsidiaries, Alpha CML LLC, Alpha 300952 LLC, Alpha 301419 LLC, Alpha 330453 LLC, Alpha 331290 LLC, Alpha 332002 LLC, Alpha 332003 LLC, Alpha 335407 LLC, Alpha 340986 LLC, Alpha 341164 LLC, Alpha 341222 LLC, Alpha 340479 LLC, Alpha 341223 LLC, Alpha 341938 LLC, Alpha 341948 LLC, Alpha 343785 LLC, Alpha 344058 LLC, Alpha 344304 LLC, Alpha 344768 LLC, Alpha 344825 LLC, Alpha 345156 LLC, and Alpha 346802 LLC, as debtors in possession in the Reorganization Cases.

**1.39** *"Deductible Claims"* means, with respect to a Tort Claim for which there is Insurance Coverage, that portion of the Tort Claim which is equal in amount to the lesser of (a) the deductible or the self-insured retention amount, as applicable, as provided in the relevant Insurance Policy, and (b) the amount of the Tort Claim.

**1.40** *"Disallowed Claim"* means any Claim that has been disallowed by a Bankruptcy Court order that has not been stayed pending appeal.

**1.41** *"Disclosure Statement"* means the Debtors' Joint Disclosure Statement, including all attached exhibits, appendices, and schedules, as submitted and filed by the Debtors pursuant to Section 1125 of the Bankruptcy Code in respect of the Reorganization Cases and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, as such Disclosure Statement has been and may be amended, supplemented, modified, or amended and restated from time to time.

**1.42** *"Disclosure Statement Approval Order"* means the Order Approving Disclosure Statement entered in the Reorganization Cases.

**1.43** *"Disputed Claim"* means—

(a) any Claim (other than a Disallowed Claim or an Excess Tort Claim) that has not been Allowed by an order of the Bankruptcy Court as to which—

(1) a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court and

(2) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been

(A) withdrawn,

(B) overruled or denied by an order of the Bankruptcy Court, or

(C) sustained by an order of the Bankruptcy Court.

(b) a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if—

(1) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules,

(2) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules,

(3) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated,

(4) no corresponding Claim has been scheduled in the Schedules, or

(5) the Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect of the Claim.

(c) to the extent that an objection relates to the allowance of only a part of a Claim, the Claim to the extent of the objection, or

(d) to the extent that the amount of the Claim specified in the Proof of

Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, the amount specified in the Proof of Claim that is in excess of the amount of the Claim as scheduled.

**1.44** *"Distribution Date"* means

**1.45** *"Docket"* means the docket or dockets in the Reorganization Cases maintained by the Clerk.

**1.46** *"Docket No."* means the number of the referenced document reflected on the Docket in the Lead Case.

**1.47** *"Dunkin' Brands"* means Dunkin' Brands, Inc.

**1.48** *"Dunkin' Donuts"* means Dunkin' Donuts Franchising, LLC.

**1.49** *"Effective Date"* means and will occur on the first business day after the Confirmation Order becomes a Final Order.

**1.50** *"Entity"* has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**1.51** *"Environmental Claim"* means any Claim or demand now existing or hereafter arising, in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtors, any Affiliate or Subsidiary of the Debtors, their predecessors, successors or assigns, or their present or former officers, directors, or employees, arising out of, or related to, any Environmental Laws, including any Claim or demand (a) to restrict or enjoin, or recover damages, costs, or expenses to remedy, any release, environmental pollution, contamination, or nuisance or to require the Debtors to remedy or to reimburse, pay, or incur costs to remedy any release, environmental pollution, contamination, or nuisance; (b) to remedy, reimburse, compensate, or pay any damage, penalty, fine, or forfeiture for or to restrict or enjoin any violation of or alleged violation of any Environmental Laws; (c) to pay any contractual claim with respect to any Environmental Laws; or (d) to pay or reimburse any Person or Entity for personal injury (including worker's compensation, sickness, disease, or death), tangible or intangible property damage or natural resource damage arising out of, or relating to, any release, environmental pollution, contamination or nuisance, whether or not contemplated in subparagraphs (a) through (c) above, or whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the injury or damage giving rise to such Claim or demand was diagnosable or undiagnosable, detectable or undetectable, before the Confirmation of the Plan or before the Final Decree Date. Notwithstanding anything to the contrary contained in the Plan, when used in the Plan, the term "Environmental Claim" will be broadly construed

and will include (y) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (z) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

**1.52** *"Environmental Laws"* means (a) the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §§ 9601, *et seq.*; (b) the Resource Conservation and Recovery Act, as amended by the Hazardous and Solid Waste Amendment of 1984, 42 U.S.C. §§ 6901, *et seq.*; (c) the Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*; (d) the Clean Water Act of 1977, 33 U.S.C. §§ 1251, *et seq.*; (e) the Toxic Substances Control Act, 15 U.S.C. §§ 2601, *et seq.*; (f) the Oil Pollution Act of 1990 (OPA 90); (g) all statutes or laws issued or promulgated by any Governmental Authority, as they may be amended from time to time, relating to environmental contamination or pollution, air pollution, water pollution, noise control, and/or the handling, transportation, discharge, existence, release, disposal or recovery of onsite or offsite hazardous, toxic or dangerous wastes, substances, chemicals, or materials (including petroleum); and (h) the ordinances, rules, regulations, orders, notices of violation, requests, demands, and requirements issued or promulgated by any Governmental Authority in connection with such statutes or laws.

**1.53** *"Estates"* means the estates created for the Debtors under Section 541 of the Bankruptcy Code upon the commencement of the Reorganization Cases.

**1.54** *"Estimation Hearing"* means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

**1.55** *"Excess Tort Claim"* means the amount, if any, by which a Tort Claim for which there is Insurance Coverage exceeds the amount of the Deductible Claim for such Tort Claim.

**1.56** *"Final Decree Date"* means the date on which a Final Order has been entered closing the Reorganization Cases.

**1.57** *"Final Order"* means—

(a)    an order, judgment, ruling, or other decree (or any revision, modification, or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court that has jurisdiction over any proceeding in connection with the Reorganization Cases for the purpose of such proceeding, which order, judgment, ruling, or other decree has not been reversed, vacated, stayed, modified, or amended and as to which—

(1)    no appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has been taken and is pending and the time for

the filing of such appeal, petition for review, reargument, rehearing, reconsideration, or certiorari has expired, or

(2)     such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or

(b)     a stipulation or other agreement entered into which has the effect of any such order, judgment, ruling, or other decree with like finality.

**1.58**     ***"Governmental Authority"*** means any agency, board, bureau, executive, court, commission, department, legislature, tribunal, instrumentality, or administration of the United States, a foreign country, or any state, or any provincial, territorial, municipal, state, local, or other governmental Entity in the United States of America or a foreign country.

**1.59**     ***"Guarantors"*** means William P. Daly, Sr., David J. Daly, William P. Daly, Jr., Thomas M. Daly, Elizabeth Daly Brulport, and Paul F. Cavanaugh.

**1.60**     ***"Hitachi"*** means Hitachi Capital America Corp.

**1.61**     ***"Holder"*** means—

(a)     as to any Claim—

(1)     the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim;

(2)     if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the Schedules or books and records of the Debtors or as otherwise determined by order of the Bankruptcy Court; or

(3)     if the owner or holder of such Claim has transferred the Claim to a third party, advised the Debtors or Reorganized Debtors in writing of such transfer and transferee, and filed notice of the transfer and transferee with the Clerk of the Bankruptcy Court as required by Bankruptcy Rule 3001(e); and

(b)     as to any Membership Interest, all owners of Membership Interests, including any and all options, warrants, or similar instruments for the acquisition of Membership Interests, and any and all rights to subscribe to or convert into Membership Interests.

**1.62** *"Impaired"* means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.63** *"Insurance Coverage"* means any insurance coverage under any Insurance Policy that is available for the payment of liability or damages arising from or related to Tort Claims.

**1.64** *"Insurance Policy"* means any insurance policy in effect at any time on or before the Effective Date naming the Debtors (or any predecessor, Subsidiary, or past or present Affiliate of the Debtors) as an insured, or otherwise affording the Debtors (or any predecessor, Subsidiary, or past or present Affiliate of the Debtors) Insurance Coverage, upon which any claim has been or may be made by the holder of a Tort Claim.

**1.65** *"Intercompany Claims"* means any and all Claims that any Debtor holds against any other Debtor.

**1.66** *"Lead Case"* means *In re AlphaRock LLC*, Case No. 8:09-bk-11888-CPM.

**1.67** *"Liabilities"* means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now, or hereafter owing, arising, due, or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtors or any Affiliate, Subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtors or any Affiliate, Subsidiary, predecessor, successor, or assign thereof, the Real Property, any other assets of the Debtors, the business or operations of the Debtors, the Reorganization Cases, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, as used in the Plan, the term "Liabilities" does not include any obligation of the Reorganized Debtors expressly set forth in the Plan.

**1.68** *"Lien"* means, with respect to any asset or Property, any mortgage, pledge, security interest, lien, right of first refusal, option, or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such asset or Property, whether voluntary or involuntary and whether arising by law, contract, or otherwise.

**1.69** *"Membership Interests"* mean any and all membership interests in the Debtors and any and all rights to subscribe to or convert into membership interests of the Debtors including, without limitation, the Subsidiary Membership Interests and the Alpha Membership Interests.

**1.70** *"NDCP"* means National DCP, LLC.

**1.71** *"Northeast DCP"* means Dunkin' Donuts Northeast Distribution Center, Inc.

**1.72** *"Notice Parties"* means (a) Reorganized Debtors; (b) CIT; (c) Dunkin' Brands; and (d) the United States Trustee.

**1.73** *"Person"* means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency, or political subdivision thereof, or any other entity or institution of any type whatsoever, including any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

**1.74** *"Petition Date"* means June 5, 2009, the date on which the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

**1.75** *"Plan," "the Plan,"* or *"this Plan"* means this Joint Plan of Reorganization dated as of the date first set forth on the title page (together with all Exhibits to the Plan), as the Plan may be amended, supplemented, modified, or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

**1.76** *"Plan Contribution Amount"* means the amount of cash to be contributed to the Reorganized Debtors on the Effective Date by the Plan Funders for the retention of the Membership Interests by all Holders of Membership Interests. The Plan Contribution Amount will be in an amount not less than seven hundred thousand dollars( $700,000.00).

**1.77** *"Plan Documents"* means all documents that aid in effectuating the Plan, including without limitation all documents filed with the Bankruptcy Court at or before the Confirmation Hearing and the Confirmation Order.

**1.78** *"Plan Funders"* means, collectively, Bill Daly, Sr., Bill Daly, Jr., Elizabeth Brulport, and Thomas Daly.

**1.79** *"Postconfirmation"* means arising or accruing on or after the Confirmation Date and before the Effective Date.

**1.80** *"Postpetition"* means arising or accruing on or after the Petition Date and before the Effective Date.

**1.81** *"Prepetition"* means arising or accruing prior to the Petition Date.

**1.82** *"Priority Claim"* means a Claim that is entitled to a priority in payment pursuant to subparagraphs (3) through (7) or subparagraph (9) of Section 507(a) of the Bankruptcy Code and that is not an Administrative Expense, Priority Tax Claim, Secured Claim, or Unsecured Claim.

**1.83** *"Priority Tax Claim"* means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense, Secured Claim, or Unsecured Claim.

**1.84** *"Proponents"* means the Debtors as the proponents of the Plan.

**1.85** *"Pro-Rata Share"* means, with respect to any distribution to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which will be the amount of such Holder's Allowed Claim and the denominator of which will be the sum of all Allowed Claims and all Reserved Claims in such Class and, if applicable, other Classes.. The term "Pro Rata Share" will also be applied in respect of Administrative Expenses, Priority Tax Claims, and Priority Claims as the context requires in the Plan.

**1.86** *"Professional"* means any professional employed in the Reorganization Cases with the approval of the Bankruptcy Court pursuant to Section 327 or 1103 of the Bankruptcy Code.

**1.87** *"Proof of Claim"* means a proof of claim filed with the Bankruptcy Court with respect to the Debtors pursuant to Bankruptcy Rule 3001, 3002, or 3003.

**1.88** *"Property"* means any property or asset of any kind in which the Debtors or the Estates holds an interest, whether real, personal or mixed, tangible or intangible, whether now owned or hereafter acquired or arising, and wherever located, and any interest of any kind in such property or asset.

**1.89** *"Real Property"* means any interest of the Debtors or the Estates in Property that constitutes real estate (including without limitation buildings, improvements, and appurtenances located at on or such real estate).

**1.90** *"Reorganization Cases"* means the cases commenced in the Bankruptcy Court by the Debtors on the Petition Date as:

| | |
|---|---|
| ALPHAROCK LLC | Case No. 8:09-bk-11888-CPM |
| ALPHA 300952 LLC | Case No. 8:09-bk-11891-CPM |
| ALPHA 301419 LLC | Case No. 8:09-bk-11892-CPM |

| | |
|---|---|
| ALPHA 330453 LLC | Case No. 8:09-bk-11894-CPM |
| ALPHA 331290 LLC | Case No. 8:09-bk-11897-CPM |
| ALPHA 332002 LLC | Case No. 8:09-bk-11899-CPM |
| ALPHA 332003 LLC | Case No. 8:09-bk-11900-CPM |
| ALPHA 335407 LLC | Case No. 8:09-bk-11902-CPM |
| ALPHA 340479 LLC | Case No. 8:09-bk-11903-CPM |
| ALPHA 340986 LLC | Case No. 8:09-bk-11904-CPM |
| ALPHA 341164 LLC | Case No. 8:09-bk-11905-CPM |
| ALPHA 341222 LLC | Case No. 8:09-bk-11906-CPM |
| ALPHA 341223 LLC | Case No. 8:09-bk-11907-CPM |
| ALPHA 341938 LLC | Case No. 8:09-bk-11908-CPM |
| ALPHA 341948 LLC | Case No. 8:09-bk-11910-CPM |
| ALPHA 343785 LLC | Case No. 8:09-bk-11912-CPM |
| ALPHA 344058 LLC | Case No. 8:09-bk-11914-CPM |
| ALPHA 344304 LLC | Case No. 8:09-bk-11915-CPM |
| ALPHA 344768 LLC | Case No. 8:09-bk-11916-CPM |
| ALPHA 344825 LLC | Case No. 8:09-bk-11917-CPM |
| ALPHA 345156 LLC | Case No. 8:09-bk-11918-CPM |
| ALPHA 346802 LLC | Case No. 8:09-bk-11919-CPM |
| ALPHA CML LLC | Case No. 8:09-bk-11920-CPM |

**1.91** *"Reorganized Debtors"* means AlphaRock LLC and its wholly-owned subsidiaries, Alpha CML LLC, Alpha 300952 LLC, Alpha 301419 LLC, Alpha 330453 LLC, Alpha 331290 LLC, Alpha 332002 LLC, Alpha 332003 LLC, Alpha 335407 LLC, Alpha 340986 LLC, Alpha 341164 LLC, Alpha 341222 LLC, Alpha 340479 LLC, Alpha 341223 LLC, Alpha 341938 LLC, Alpha 341948 LLC, Alpha 343785 LLC, Alpha 344058 LLC, Alpha 344304 LLC, Alpha 344768 LLC, Alpha 344825 LLC, Alpha 345156 LLC, and Alpha 346802 LLC on and after the Effective Date as reorganized pursuant to the Plan.

**1.92** *"Reserved Claims"* means all Disputed Claims as of the applicable determination date (a) in the full amount listed in the Schedules, or (b) if a Proof of Claim was timely filed with respect to such Claim, in the face amount of such Proof of Claim, or (c) if the Claim has been estimated by the Bankruptcy Court for the purpose of allowance pursuant to Section 502(c) of the Bankruptcy Code, in the estimated amount. Unless an order of the Bankruptcy Court estimating a Claim provides otherwise, the amount so estimated will apply both for voting purposes and for purposes of computing Reserved Claims. As used in the Plan, the term "Reserved Claims" will not include any Disallowed Claims.

**1.93** *"Restaurants"* means the Debtors' Dunkin' Donuts and Baskin-Robbins restaurants as follows: (a) Restaurant No. 301419 located at 2495 McCall Road, Englewood, FL 34224; (b) Restaurant No. 341938 located at 2517 Tamiami Trail, Punta Gorda, FL 33950; (c) Restaurant No. 341164 which, until July 31, 2009, was located at 4233 Tamiami Tr., Port Charlotte, FL 33952; (d) Restaurant No. 332002 located at 20101 Peachland Boulevard, Port Charlotte, FL 33954; (e) Restaurant No. 332003 located at 3190 Tamiami Trail, Port Charlotte, FL 33952; (f) Restaurant No. 335407 located at 829 Tamiami Trail, Port Charlotte, FL 33592; (g) Restaurant No. 343785 located at 8445 Tamiami Trail, Sarasota, FL 34238; (h) Restaurant No. 331290 which, prior to the Petition Date was located at 360 Commercial Court, Venice, FL 34292; (i) Restaurant No. 340986 located at 300 Washington Blvd. North, Sarasota, FL 34236; (j) Restaurant No. 340479 located at 5871 Fruitville Road, Sarasota, FL 34232; (k) Restaurant No. 341223 located at 1575 South Tamiami Trail, Sarasota, FL 34237; (l) Restaurant No. 300952 located at 1801 South Tamiami Trail, Venice, FL 34285; (m) Restaurant No. 341222 located at 5641 Clark Road, Sarasota, FL 34233; (n) Restaurant No. 341948 which, until July 31, 2009, was located at 2480 Stickney Point Road, Sarasota, FL 34231; (o) Restaurant No. 344768 which, prior to the Petition Date, was located at 6212 Tamiami Trail, Sarasota, FL 34231; (p) Restaurant No. 344825 located at 7305 53rd Avenue East, Bradenton, FL 34203; (q) Restaurant No. 345156 located at 6220 SR 64, Bradenton, FL 34209; (r) Restaurant No. 330453 located at 900 Kings Highway, Punta Gorda, FL 33980; (s) Restaurant No. 346802 located at 14405 SR 70 East, Unit 101 Bradenton, FL 34202; and (t) Restaurant No. 344058 which, prior to the Petition Date, was located at 11002 East State Road 64, Bradenton, FL 34202. The Restaurants shall be individually referred to as a "**Restaurant**."

**1.94**    *"Schedules"* means, collectively, the Schedules and Statements of Financial Affairs filed by the Debtors in the Reorganization Cases pursuant to Bankruptcy Rule 1007, as amended or supplemented from time to time.

**1.95**    *"SDA"* means that certain Store Development Agreement by and between the Debtor and Dunkin' Brands.

**1.96**    *"Secured Claim"* means any Claim that is—

(a)    secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law; or

(b)    subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both paragraphs (a) and (b) of this section, only to the extent of the Estates' interest in the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estates' interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**1.97**    *"Secured Creditor"* means any Creditor holding a Secured Claim.

**1.98**    *"Southeast DCP"* means Dunkin' Donuts Southeast Distribution Center, Inc.

**1.99**    *"Subsidiaries"* means Alpha CML LLC, Alpha 300952 LLC, Alpha 301419 LLC, Alpha 330453 LLC, Alpha 331290 LLC, Alpha 332002 LLC, Alpha 332003 LLC, Alpha 335407 LLC, Alpha 340986 LLC, Alpha 341164 LLC, Alpha 341222 LLC, Alpha 340479 LLC, Alpha 341223 LLC, Alpha 341938 LLC, Alpha 341948 LLC, Alpha 343785 LLC, Alpha 344058 LLC, Alpha 344304 LLC, Alpha 344768 LLC, Alpha 344825 LLC, Alpha 345156 LLC, and Alpha 346802 LLC.

**1.100**    *"Subsidiary Membership Interests"* means the membership interests in the Subsidiaries held by AlphaRock LLC.

**1.101**    *"Superpriority Administrative Expense"* means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Sections 364(c)(1) and 365 of the Bankruptcy Code.

**1.102**    *"Tort Claim"* means any Claim or demand now existing or hereafter arising, including all Claims or demands in the nature of or sounding in tort, contract, warranty, or under any other theory of law or equity, against the Debtors, their predecessors, successors or

assigns, Subsidiaries or Affiliates, or their present or former officers, directors or employees, for, relating to, or arising from any death, personal injury or damages or loss, whether physical, emotional, or otherwise, to any Person or Property, including any Claim or demand for compensatory damages, such as loss of consortium, wrongful death, unearned wages, survivorship, proximate, consequential, general, and special damages, and punitive damages, and any products liability claim, in each case for any act or event occurring on or prior to the Effective Date, whether or not such Claim or demand is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, or whether or not the facts of or legal basis for such Claim or demand are known or unknown, or whether or not the loss or damage giving rise to such Claim or demand was diagnosable, undiagnosable, detectable or undetectable before the Effective Date. Notwithstanding anything to the contrary contained in the Plan, the term "Tort Claim" is broadly construed and includes (a) claims that may or may not presently constitute "claims" within the meaning of Section 101(5) of the Bankruptcy Code and (b) demands that may or may not presently constitute "demands" within the meaning of Section 524(g)(5) of the Bankruptcy Code.

**1.103** ***"Unimpaired Claim"*** means a Claim that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**1.104** ***"United States Trustee"*** means Donald F. Walton, as the United States Trustee for Region 21, and the Office of the United States Trustee located in Tampa, Florida, which Cynthia Burnette serves as the Assistant United States Trustee for the Middle District of Florida.

**1.105** ***"Unsecured Claim"*** means any Claim that is not an Administrative Expense, Priority Tax Claim, Priority Claim, Secured Claim, Intercompany Claim, or Excess Tort Claim, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code and (b) any portion of a Claim to the extent the value of the Holder's interest in the Estates' interest in the Property securing such Claim is less than the amount of the Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code.

**1.106** ***"Unsecured Creditor"*** means any Creditor holding an Unsecured Claim.

# Article 2
## CONTROLLING LAW AND RULES OF CONSTRUCTION

**2.01** ***Reference to Bankruptcy Code and Bankruptcy Rules.*** Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or the Bankruptcy Rules will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be. In the instance of a conflict or ambiguity, the

Bankruptcy Code or the Bankruptcy Rules, as applicable, will control.

**2.02** ***Rules of Construction.*** For purposes of the Plan, the following rules of construction will apply:

(a)     Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.

(b)     Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document will be substantially in such form or substantially on such terms and conditions.

(c)     Any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented.

(d)     If the description in the Plan of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit will control.

(e)     Unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan.

(f)     Unless the context requires otherwise, the words "herein," "hereunder," and "hereto" refer to the Plan in its entirety rather than to a particular article or section or subsection of the Plan.

(g)     Any phrase containing the term "include" or "including" will mean including without limitation.

(h)     All of the Exhibits referred to in the Plan will be deemed incorporated herein by such reference and made a part hereof for all purposes.

(i)     The rules of construction set forth in Section 102 of the Bankruptcy Code will apply in the construction of the Plan to the extent that such rules are not inconsistent with any other provision of this §2.02 of the Plan.

# Article 3
## TREATMENT OF ADMINISTRATIVE
## EXPENSES AND PRIORITY TAX CLAIMS

**3.01** *Nonclassification.* In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses, and Priority Tax Claims have not been classified in the Plan. The treatment accorded to Administrative Expenses and Priority Tax Claims is set forth in this Article 3.

**3.02** *Administrative Expenses.* Except as otherwise provided below and subject to Article 7.01 of the Plan which provides for the payment of Allowed Cure Claims (including the portion of said Allowed Cure Claims that are Allowed Administrative Expense Claims) on or before the date that is 120 days after the Effective Date, each Holder of an Allowed Administrative Expense will be paid (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Administrative Expense Claims, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense and the Debtors or Reorganized Debtors.

**3.03** *Fees and Charges.* All fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§1911-1930, through the Confirmation Date, as determined by the Bankruptcy Court in the Confirmation Order, will be paid on or before the Effective Date.

**3.04** *Applications for Allowance of Administrative Expenses.* All Holders of Administrative Expenses (including Holders of any Claims for non-ad valorem Postpetition federal, state, or local taxes and Holders of Claims under Section 503(b)(9) of the Bankruptcy Code) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Bar Date will be forever barred from asserting such Administrative Expense against the Debtors, the Reorganized Debtors, or any of their respective Properties. No Person shall have an Allowed Administrative Expense Claim by virtue of having filed a proof of claim on a Form B10 or otherwise. Notwithstanding the foregoing, all Professionals must file final fee applications on or before the date that is thirty (30) days after the Effective Date.

**3.05** *Priority Tax Claims.* Each Holder of an Allowed Priority Tax Claim will be paid (a) an amount, in Cash, equal to the Allowed Amount of its Priority Tax Claim, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Priority Tax Claim and the Debtor.

# Article 4
## DESIGNATION OF CLASSES OF CLAIMS AND MEMBERSHIP INTERESTS

**4.01    *In General.*** Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Membership Interests. A Claim or Membership Interest is classified (a) in a particular Class only to the extent the Claim or Membership Interest qualifies within the description of that Class and (b) in a different Class to the extent the Claim or Membership Interest qualifies within the description of that different Class. Unless otherwise expressly stated, the Classes of Claims set forth below include all Claims that qualify within the description of that Class.

**4.02    *Classes.*** For purposes of this Plan, Claims and Membership Interests are classified as follows:

(a)    Class 1 comprises all Priority Claims.

(b)    Class 2 comprises the Secured Claims of CIT.

(c)    Class 3 comprises all other Secured Claims not otherwise classified in the Plan.

(d)    Class 4 comprises all Claims of County Tax Collectors.

(e)    Class 5 comprises all Unsecured Deficiency Claims of CIT.

(f)    Class 6 comprises all Claims of Dunkin' Donuts, Dunkin' Brands, and Baskin-Robbins, excluding rejection damage claims which shall be treated in accordance with Class 7.

(g)    Class 7 comprises all Unsecured Claims not otherwise classified in the Plan.

(h)    Class 8 comprises all Intercompany Claims.

(i)    Class 9 comprises the AlphaRock Membership Interests.

(j)    Class 10 comprises all Subsidiary Membership Interests.

(k)    Class 11 comprises the Secured Claim of D.N. McNulty, Inc.

# Article 5
## TREATMENT OF CLASSIFIED CLAIMS AND MEMBERSHIP INTERESTS

**5.01** *In General.* Claims and Membership Interests will be treated under the Plan in the manner set forth in this Article 5. Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Membership Interests pursuant to the Plan will be in full and final satisfaction, settlement, release, extinguishment, and discharge of their respective Allowed Claims, of any nature whatsoever, and Allowed Membership Interests.

**5.02** *Unclassified Claims.* Each Holder of an Allowed Administrative Expense or an Allowed Priority Tax Claim will receive the treatment set forth in Article 3 of the Plan.

**5.03** *Class 1: Priority Claims.* Each Holder of an Allowed Priority Claim will receive (a) on the Effective Date, an amount, in Cash, equal to the Allowed Amount of its Priority Claim, in accordance with Section 1129(a)(9)(B) of the Bankruptcy Code, (b) under such other terms as may be agreed upon by the Holder of such Allowed Priority Claim and the Debtors or Reorganized Debtors, or (c) as otherwise ordered by Final Order. Class 1 is Unimpaired.

**5.04** *Class 2: Secured Claims of CIT.* Class 2 comprises the Secured Claims of CIT.

(a) **Class 2A:** Class 2A comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 301419 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 2495 McCall Road, Englewood, FL 34224. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 301419 LLC shall pay the Allowed Class 2A Claim (which amount is set forth below) as follows: The Allowed Class 2A Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 301419 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2A is Impaired.

(b) **Class 2B:** Class 2B comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 341938 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 2517 Tamiami Trail, Punta Gorda, FL 33950. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 341938 LLC shall pay the Allowed Class 2B Claim (which amount is set forth below) as follows: The Allowed Class 2B Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the

Effective Date and continuing on the first day of each succeeding month, Alpha 341938 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.* Class 2B is Impaired.

(c)     ***Class 2C:*** Class 2C comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 341164 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, until July 31, 2009, were located at 4233 Tamiami Trail, Port Charlotte, FL 33952. Certain of these assets are being utilized in other Restaurants while other assets are in storage. The Debtors intend to retain all of the assets. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 341164 LLC shall pay the Allowed Class 2C Claim (which amount is set forth below) as follows:  The Allowed Class 2C Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 341164 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.* Class 2C is Impaired.

(d)     ***Class 2D:*** Class 2D comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 332002 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 20101 Peachland Boulevard, Port Charlotte, FL 33954. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 332002 LLC shall pay the Allowed Class 2D Claim (which amount is set forth below) as follows:  The Allowed Class 2D Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 332002 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.* Class 2D is Impaired.

(e)     ***Class 2E:*** Class 2E comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 332003 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 3190 Tamiami Trail, Port Charlotte, FL 33952.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 332003 LLC shall pay the Allowed Class 2E Claim (which amount is set forth below) as follows:  The Allowed Class 2E Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 332003 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.* Class 2E is Impaired.

(f)     ***Class 2F:*** Class 2F comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 335407 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 829 Tamiami Trail, Port Charlotte, FL 33592. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 335407 LLC shall pay the Allowed Class 2F Claim (which amount is set forth below) as follows:  The Allowed Class 2F Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 335407 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.*  Class 2F is Impaired.

(g)     ***Class 2G:*** Class 2G comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 343785 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 8445 Tamiami Trail, Sarasota, FL 34238.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 343785 LLC shall pay the Allowed Class 2G Claim (which amount is set forth below) as follows:  The Allowed Class 2G Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following Effective Date and continuing on the first day of each succeeding month, Alpha 343785 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.*  Class 2G is Impaired.

(h)     ***Class 2H:*** Class 2H comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 331290 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, prior to the Petition Date, were located at 360 Commercial Court, Venice, FL 34292.  Certain of these assets are being utilized in other Restaurants while other assets are in storage.  The Debtors intend to retain all of the assets.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 331290 LLC shall pay the Allowed Class 2H Claim (which amount is set forth below) as follows:  The Allowed Class 2H Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 331290 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum.*  Class 2H is Impaired.

(i)     ***Class 2I:*** Class 2I comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 340986 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 300 Washington Blvd. North, Sarasota, FL 34236.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the

Plan and Alpha 340986 LLC shall pay the Allowed Class 2I Claim (which amount is set forth below) as follows: The Allowed Class 2I Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 340986 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2I is Impaired.

(j) **Class 2J:** Class 2J comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 340479 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 5871 Fruitville Road, Sarasota, FL 34232. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 340479 LLC shall pay the Allowed Class 2J Claim (which amount is set forth below) as follows: The Allowed Class 2J Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 340479 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2J is Impaired.

(k) **Class 2K:** Class 2K comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 341223 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 1575 South Tamiami Trail, Sarasota, FL 34237. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 341223 LLC shall pay the Allowed Class 2K Claim (which amount is set forth below) as follows: The Allowed Class 2K Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 341223 LLC shall equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2K is Impaired.

(l) **Class 2L:** Class 2L comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 300952 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 1801 South Tamiami Trail, Venice, FL 34285. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 300952 LLC shall pay the Allowed Class 2L Claim (which amount is set forth below) as follows: The Allowed Class 2L Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 300952 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2L is Impaired.

(m)     ***Class 2M:*** Class 2M comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 341222 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 5641 Clark Road, Sarasota, FL 34233. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 341222 LLC shall pay the Allowed Class 2M Claim (which amount is set forth below) as follows: The Allowed Class 2M Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 341222 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2M is Impaired.

(n)     ***Class 2N:*** Class 2N comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 341948 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, until July 31, 2009, were located at 2480 Stickney Point Road, Sarasota, FL 34231. Certain of these assets are being utilized in other Restaurants while other assets are in storage. The Debtors intend to retain all of the assets. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 341948 LLC shall pay the Allowed Class 2N Claim (which amount is set forth below) as follows: The Allowed Class 2N Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 341948 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2N is Impaired.

(o)     ***Class 2O:*** Class 2O comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 344768 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, prior to the Petition Date, were located at 6212 Tamiami Trail, Sarasota, FL 34231. Certain of these assets are being utilized in other Restaurants while other assets are in storage. The Debtors intend to retain all of the assets. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 344768 LLC shall pay the Allowed Class 2O Claim (which amount is set forth below) as follows: The Allowed Class 2O Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 344768 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2O is Impaired.

(p)     ***Class 2P:*** Class 2P comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 344825 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 7305 53rd Avenue East, Bradenton, FL 34203.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 344825 LLC shall pay the Allowed Class 2P Claim (which amount is set forth below) as follows:  The Allowed Class 2P Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 344825 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*.  Class 2P is Impaired.

(q)     ***Class 2Q:*** Class 2Q comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 345156 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 6220 SR 64, Bradenton, FL 34209.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 345156 LLC shall pay the Allowed Class 2Q Claim (which amount is set forth below) as follows:  The Allowed Class 2Q Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 345156 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*.  Class 2Q is Impaired.

(r)     ***Class 2R:*** Class 2R comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 330453 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 900 Kings Highway, Punta Gorda, FL 33980.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 330453 LLC shall pay the Allowed Class 2R Claim (which amount is set forth below) as follows:  The Allowed Class 2R Claim shall be amortized over 7 years and shall be paid as follows:  Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 330453 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*.  Class 2R is Impaired.

(s)     ***Class 2S:*** Class 2S comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 346802 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles located at 14405 SR 70 East, Unit 101 Bradenton, FL 34202.  On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 346802 LLC shall pay the Allowed Class 2S Claim (which amount is set forth below) as follows:  The Allowed Class 2S Claim shall be amortized over 7

years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 346802 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2S is Impaired.

(t)     ***Class 2T:*** Class 2T comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 344058 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, prior to the Petition Date, were located at 11002 East State Road 64, Bradenton, FL 34202. Certain of these assets are being utilized in other Restaurants while other assets are in storage. The Debtors intend to retain all of the assets. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 344058 LLC shall pay the Allowed Class 2T Claim (which amount is set forth below) as follows: The Allowed Class 2T Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 344058 LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2T is Impaired.

(u)     ***Class 2U:*** Class 2U comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha CML LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles in a portion of the premises located at 5275 Duncan Road, Highway 17, Punta Gorda, FL 33982. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha CML LLC shall pay the Allowed Class 2U Claim (which amount is set forth below) as follows: The Allowed Class 2U Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha CML LLC shall make equal monthly principal and interest installments at seven percent (7%) *per annum*. Class 2U is Impaired.

(v)     ***Class 2V:*** Class 2V comprises the Secured Claim of CIT by virtue of a security interest in certain assets of Alpha 344304 LLC including, but not limited to, furniture, fixtures, machinery, equipment, inventory, accounts, and general intangibles which, prior to the Petition Date, might have been located at 1042 6th Avenue South, Wauchula, FL 33873. Certain of these assets are being utilized in other Restaurants while other assets are in storage. The Debtors intend to retain all of the assets. On the Effective Date, the existing CIT loan documents shall be modified as set forth in the Plan and Alpha 344304 LLC shall pay the Allowed Class 2V Claim (which amount is set forth below) as follows: The Allowed Class 2V Claim shall be amortized over 7 years and shall be paid as follows: Commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month, Alpha 344304 LLC shall make equal monthly principal and

interest installments at seven percent (7%) *per annum*. Class 2V is Impaired.

(w)    CIT's Secured Claims shall be allowed in the total amount of $1,500,000, or in such other amount as determined by a final order of the Bankruptcy Court, consistent with 11 U.S.C. §§506 and 1129(b), broken out as follows:

| Class | Total Allowed Secured Claim |
|---|---|
| 2A--Alpha 301419 LLC | $77,000 |
| 2B--Alpha 341938 LLC | $77,000 |
| 2C--Alpha 341164 LLC | $5,000 |
| 2D--Alpha 332002 LLC | $65,000 |
| 2E--Alpha 332003 LLC | $65,000 |
| 2F--Alpha 335407 LLC | $65,000 |
| 2G--Alpha 343785 LLC | $67,000 |
| 2H--Alpha 331290 LLC | $5,000 |
| 2I--Alpha 340986 LLC | $75,000 |
| 2J--Alpha 340479 LLC | $77,000 |
| 2K--Alpha 341223 LLC | $77,000 |
| 2L--Alpha 300952 LLC | $77,000 |
| 2M--Alpha 341222 LLC | $77,000 |
| 2N--Alpha 341948 LLC | $5,000 |
| 2O--Alpha 344768 LLC | $5,000 |
| 2P--Alpha 344825 LLC | $67,000 |
| 2Q--Alpha 345156 LLC | $77,000 |
| 2R--Alpha 330453 LLC | $75,000 |

| | |
|---|---:|
| 2S--Alpha 346802 LLC | $77,000 |
| 2T--Alpha 344058 LLC | $5,000 |
| 2U--Alpha CML LLC | $375,000 |
| 2V--Alpha 344304 LLC | $5,000 |
| *Total* | ***$1,500,000*** |

**5.05** *Class 3: Other Secured Claims.* Class 3 comprises all Allowed Secured Claims not otherwise classified under the Plan. Each Holder of an Allowed Secured Claim in Class 3 will receive either the collateral securing such Allowed Claim or the value of such collateral within 60 days following the later of the Effective Date or the date that such collateral is valued pursuant to a Final Order. Class 3 is Unimpaired.

**5.06** *Class 4: Claims of County Tax Collectors.* Class 4 comprises all Claims of County Tax Collectors on account of ad valorem real estate and tangible personal property taxes.

    (a)    Class 4A comprises all Claims of the Charlotte County Tax Collector on account of tangible personal property taxes on personal property located at:

    (1)    2517 Tamiami Trail, Punta Gorda, FL 33950

    (2)    4233 Tamiami Trail, Port Charlotte, FL 33952

    (3)    20101 Peachland Boulevard, Port Charlotte, FL 33954

    (4)    3190 Tamiami Trail, Port Charlotte, FL 33952

    (5)    829 Tamiami Trail, Port Charlotte, FL 33951

    (6)    900 Kings Highway, Punta Gorda, FL 33980

    (7)    5275 Duncan Road, Highway 17, Punta Gorda, FL 33982

    (b)    Class 4B comprises all Claims of the Collier County Tax Collector on account of tangible personal property taxes on personal property located at:

    (1)    8934 Olde Hickory Avenue, Sarasota, FL 34238

(c)     Class 4C comprises all Claims of the Manatee County Tax Collector on account of tangible personal property taxes on personal property located at:

(1)     BP7305 53rd Avenue East, Bradenton, FL 34203

(2)     812 62nd Street, Circle East, #101, Bradenton, FL 34209

(3)     14405 SR 70 East, Unit 101, Bradenton, FL 34202

(4)     11002 East State Road 64, Bradenton, FL 34202.

(d)     Class 4D comprises all Claims of the Sarasota County Tax Collector on account of tangible personal property taxes on personal property located at:

(1)     2495 McCall Road, Englewood, FL 34224

(2)     8445 Tamiami Trail, Sarasota, FL 34238

(3)     Jacaranda 360 Commercial Court, Venice, FL 34292

(4)     300 Washington Boulevard N./Fruitville Road, Sarasota, FL 34236

(5)     5871 Fruitville Road, Sarasota, FL 34232

(6)     1575 Tamiami Trail, Sarasota, FL 34237

(7)     1801 Tamiami Trail, Sarasota, FL 34237

(8)     5641 Clark Road, Sarasota, FL 34233

(9)     2480 Stickney Point Road, Sarasota, FL 34231

(10)    6212 Tamiami Trail, Sarasota, FL 34231

The Debtors shall pay the Allowed Amount of the Class 4 Claims, together with interest as agreed by the Debtors and the Claimant or as determined by the Court at the Confirmation Hearing, in twenty (20) equal quarterly installments commencing twelve (12) months after the Effective Date. Class 4 is Impaired.

**5.07** *Class 5: Unsecured Deficiency Claims of CIT.* Class 5 comprises the Unsecured Deficiency Claims of CIT. Commencing on the first day of the month that is six (6) months following the completion of payments to CIT on account of its Class 2 Claims, and continuing thereafter on the first of the month on an annual basis for three years, the Debtors shall pay to CIT the Annual Excess Cash Flow. Class 5 is Impaired.

**5.08** *Class 6: Claims of Dunkin Donuts, Dunkin' Brands and Baskin-Robbins.* Class 6 comprises the Claims of Dunkin' Donuts, Dunkin' Brands, and Baskin-Robbins (to the extent applicable to Baskin-Robbins) except Allowed rejection damage claims which shall be treated in accordance with Class 7.

(a) On the Effective Date, the Franchise Agreements listed on <u>Exhibit A</u> attached hereto shall be assumed *in toto*.

(b) The renewal fees associated with the Debtors' entry into new Franchise Agreements for the following Restaurants shall be amortized and paid in equal monthly principal installments commencing on the first day of the month following the Effective Date and continuing on the first day of each succeeding month for eleven (11) months:

| *Restaurant* | *Renewal Fees* |
|---|---|
| Alpha 332002 LLC | $20,000 |
| Alpha 332003 LLC | $20,000 |
| Alpha 335407 LLC | $4,000 |
| *Total* | $44,000 |

Until payment in full of the foregoing amounts, the Debtors shall continue to operate pursuant to the Temporary Operating Agreements for said stores previously approved by the Bankruptcy Court. Upon payment in full of said renewal fees, the parties shall execute new Franchise Agreements with the same terms and conditions previously presented to the Debtors.

(c) As of the Effective Date, the SDA shall be deemed rejected, and Dunkin' Brands shall be allowed to retain the deposit under the SDA in the amount of $244,000. Dunkin' Donuts', Dunkin' Brands', and Baskin-Robbins' Allowed Cure Claim(s) shall be reduced, or satisfied, as the case may be, by the amount of the deposit. Within thirty days after the Effective Date, Dunkin' Brands shall provide to the Debtors its reconciliation of the amounts owed for the Cure Claims. Any disputes

regarding the amount of the Allowed Cure Claims shall be resolved by the Bankruptcy Court. In the event that a deficiency remains after application of the deposit under the SDA, the Debtors shall satisfy said deficiency on or before the date that is the later of: (a) sixty (60) days after the Effective Date, (b) sixty days (60) after receipt of the reconciliation, or (c) in the event of a dispute, the date that is ten days after entry of an order by the Bankruptcy Court establishing such deficiency.

(d)    Prior to the Effective Date, the Debtors rejected the Franchise Agreements for the following Restaurants:

      (1)    Alpha 331290 LLC;

      (2)    Alpha 344768 LLC;

      (3)    Alpha 341164 LLC; and

      (4)    Alpha 341948 LLC.

Rejection damage claims, if any, arising from the Debtors' rejection of the Franchise Agreements for the Restaurants listed above shall be treated in accordance with Class 7. However, Dunkin' Brands, Dunkin' Donuts and Baskin Robbins agree to waive any distribution to which they would be entitled based on such claims.

(e)    Class 6 is Impaired.

**5.09    *Class 7: Unsecured Claims Not Otherwise Classified.*** Class 7 comprises all other Allowed Unsecured Claims not otherwise classified in the Plan. Commencing on the first day of the month that is six (6) months following the Effective Date and continuing thereafter on the first day of the month on an annual basis until the earlier of: (a) payment in full of All Allowed Class 7 Claims or (b) seven (7) years following the Effective Date, the Debtors shall pay an amount to Holders of Allowed Claims in Class 7 equal to such Holder's *Pro Rata* share of the Annual Excess Cash Flow. Class 7 is Impaired.

**5.10    *Class 8: Intercompany Claims.*** Class 8 comprises all Intercompany Claims. All Intercompany Claims are discharged under the Plan, and the Debtors will not make any distributions or establish any reserves under the Plan on account of the Intercompany Claims. Class 8 is Impaired.

**5.11    *Class 9: AlphaRock Membership Interests.*** Class 9 comprises all Membership Interests in AlphaRock LLC. The Holders of Class 9 AlphaRock Membership Interests shall retain the AlphaRock Membership Interests in exchange for the payment of the Plan Contribution Amount. In the event that all Impaired Classes do not vote in favor of the Plan, this purchase of the AlphaRock Membership Interests shall be subject to higher and better offers at an auction to be conducted at the Confirmation Hearing. On or before the

date that is twenty days prior to the Confirmation Hearing, the Debtors shall file a notice of auction that describes the procedures for said auction in the event it is necessary. No distributions will be made under the Plan on account of the Class 9 AlphaRock Membership Interests. Class 9 is Impaired.

**5.12** *Class 10: Subsidiary Membership Interests.* Class 10 comprises all Subsidiary Membership Interests. The contribution and auction process outlined for Class 9 shall also apply to Class 10. No distributions will be made under the Plan on account of the Class 10 Subsidiary Membership Interests. Class 10 is Impaired.

**5.13** *Class 11: Secured Claim of D.N. McNulty, Inc.* Class 11 comprises the Secured Claim of D.N. McNulty, Inc. ("**McNulty**") by virtue of a security interest in a 2006 Mitsubishi FE140 truck. On the Effective Date, the Debtor shall surrender to McNulty all of the Estate's right, title, and interest in and to said truck in full satisfaction of McNulty's Allowed Claims. Class 11 is Unimpaired.

# Article 6
## ACCEPTANCE OR REJECTION OF PLAN

**6.01** *Each Impaired Class Entitled to Vote Separately.* The Holders of Claims in each Impaired Class of Claims will be entitled to vote separately to accept or reject the Plan.

**6.02** *Acceptance by Impaired Classes.* Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims will have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half (½) in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An Impaired Class of Membership Interests will have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds (⅔) in amount of the Allowed Membership Interests actually voting in such Class have voted to accept the Plan.

**6.03** *Presumed Acceptance of Plan.* Under Section 1126(f) of the Bankruptcy Code, the Holders of Claims in Unimpaired Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Except as otherwise expressly provided in the Plan, nothing contained in the Plan or otherwise will affect the Debtors' or the Reorganized Debtors' rights and legal and equitable claims or defenses in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

# Article 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01** *Rejection of Executory Contracts and Unexpired Leases.* Exhibit "A" to the Plan identifies all executory contracts and unexpired leases to be assumed under the Plan. The Cure Claims, if any, shall be paid as set forth on Exhibit "A." Any executory contract or unexpired lease that has not been expressly assumed or rejected by the Debtors with the Bankruptcy Court's approval on or prior to the Confirmation Date will be deemed rejected by the Debtors as of the Effective Date unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease, or unless such executory contract or unexpired lease is listed in Exhibit "A." The Debtors shall pay any Allowed Cure Claims (including the portion of said Allowed Cure Claims that consitiute Allowed Administrative Expense Claims) on or before the date that is one hundred twenty (120) days after the Effective Date. The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumptions and rejections described in this Article 7, pursuant to Section 365 of the Bankruptcy Code.

**7.02** *Claims Arising From Rejected Executory Contracts and Unexpired Leases.* Any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease and served upon the Debtors or the Reorganized Debtors or such Claim will be forever barred and unenforceable against the Debtors and/or the Reorganized Debtors. Except as otherwise set forth in the Plan, such Claims, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, will be Class 7 Allowed Claims. Any such Claims that become Disputed Claims will be Class 7 Disputed Claims for purposes of administration of payments to Holders of Class 7 Claims. The Plan, the Bar Date Order, and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease will constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

# Article 8
## MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

**8.01** *Overview.* The Plan and the distributions to creditors provided for herein will be funded from income generated from the continued operation of the Debtors' businesses and the contribution from the Plan Funders.

**8.02** *Board of Directors and Executive Officers of the Reorganized Debtors.*

(a)    Following the Effective Date, the operation of the Reorganized Debtors will continue to be the responsibility of its managing members, David J. Daly and William P. Daly, Sr.

(b)    From and after the Confirmation Date, managing members of the Debtors and the Reorganized Debtors will have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

**8.03** *Revestment of Assets to Reorganized Debtors.* On the Effective Date, except as otherwise expressly provided in the Plan, the Reorganized Debtors will be revested with all of their assets free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Membership Interests, and all other interests of every kind and nature.

**8.04** *Amendment of Charter.* The managing member(s) of the Reorganized Debtors will take such action as may be necessary to cause the articles of organization of the Reorganized Debtors to be amended or amended and restated to contain any provisions which may be required by the Plan or the Confirmation Order. Entry of the Confirmation Order will constitute approval of the Reorganized Debtors' charter.

**8.05** *Continued Corporate Existence.* From and after the Effective Date, each Debtor will continue to exist as a single limited liability company, with all of the powers under the applicable Florida law, for all purposes.

**8.06** *Corporate Action.* All matters provided for under this Plan involving the corporate structure of the Debtors or the Reorganized Debtors, or any corporate action to be taken by or required of the Debtors or the Reorganized Debtors, will be deemed to have occurred and be effective as provided in this Plan, and will be authorized and approved in all respects without any requirement for further action by the shareholders or directors of the Debtors or the Reorganized Debtors.

**8.07** *Payments of Salaries to Insiders.* The projections attached to the Disclosure Statement do not contain an allowance for payments of salaries to Insiders. However, as long as there is no default under the Plan and payment(s) to Insiders will not materially affect the treatment of Creditors under the Plan, the Debtors, in the exercise of their reasonable business judgment, shall be authorized to pay reasonable salaries to Insiders for their services to the Debtors.

**8.08** *Plan Contribution Amount.* The Plan Funders shall contribute the Plan Contribution Amount which shall be used to fund a portion of the distributions under the Plan.

**8.09** *Causes of Action.*

(a)     On the Effective Date, except to the extent that a Creditor or other third party has been specifically released from any Cause of Action that the Estates may have by the terms of the Plan or by order of the Bankruptcy Court, the Reorganized Debtors will retain all Causes of Action.

(b)     Except as otherwise set forth in this Plan, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will result in the waiver or release of any of the Estates' Causes of Action against such Creditor. Confirmation of the Plan and entry of the Confirmation Order is not intended to and will not be deemed to have any *res judicata*, judicial estoppel, or other effect that in any way precludes or inhibits prosecution of Causes of Action following Confirmation of the Plan.


# Article 9
## PROVISIONS GOVERNING DISTRIBUTION

**9.01**     *Tort Claims.* Holders of Tort Claims will receive treatment under the Plan as Class 7 Unsecured Claims to the extent of their Deductible Claims, and they will not be permitted to collect from or pursue any Insurance Coverage to the extent of such Deductible Claim. Their sole remedy for collection of their Deductible Claim will be from the payments to be made to Holders of Class 7 Claims. Holders of Tort Claims will, however, be entitled to pursue Insurance Coverage to the extent of any Excess Tort Claim. As a practical matter, many Holders of relatively minor Tort Claims will simply be treated as Holders of Class 7 Claims and will have no practical ability to allege and prove damages in excess of deductible or self-insured retention amounts. Holders of Excess Tort Claims will effectively have bifurcated claims. The deductible portion will be treated as a Class 7 Claim, and the portion in excess of the deductible may be collected from the Debtors' Insurance Coverage to the extent provided under the applicable Insurance Policy.

**9.02**     *Unclaimed Distributions.*

(a)     If the Holder of an Allowed Claim fails to negotiate a check issued to such Holder within 90 days of the date such check was issued, then the Reorganized Debtors will provide written notice to such Holder stating that unless such Holder negotiates such check within 30 days of the date of such notice, the amount of Cash attributable to such check will be deemed to be unclaimed, such Holder's Claim will no longer be deemed to be Allowed, and such Holder will be deemed to have no further Claim in respect of such check and will not participate in any further distributions under the Plan.

(b)     If a distribution pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtors due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made to the Reorganized Debtors as to such distribution within 120 days of the return of such distribution, then the amount of Cash attributable to such distribution will be deemed to be unclaimed and such Holder will be deemed to have no further Claim in respect of such distribution and will not participate in any further distributions under the Plan.

(c)     Any unclaimed distribution as described above from the Reorganized Debtors will revest in the Reorganized Debtors.

**9.03     *Transfers of Claims.*** In the event that the Holder of any Claim transfers such Claim on and after the Effective Date, it will immediately advise the Reorganized Debtors in writing of such transfer. The Reorganized Debtors will be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtors have received written notice to the contrary. Each transferee of any Claim will take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtors will be entitled to assume conclusively that the transferee named in such notice will thereafter be vested with all rights and powers of the transferor under the Plan.

**9.04     *Determination of Claims.***

(a)     Following the Effective Date and except as may otherwise be provided herein, the Reorganized Debtors will have standing to and may object to any Administrative Expense, Priority Claim, Priority Tax Claim, Secured Claim, Unsecured Claim, or Equity Interest. Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims will be filed with the Bankruptcy Court within ninety (90) days following the Effective Date, unless such deadline is extended by order of the Bankruptcy Court.

(b)     Disputed Claims will be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. §157(b)(2)(B) unless the Bankruptcy Court orders otherwise. If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Reorganization Cases, such Claim will be estimated by the Bankruptcy Court for purposes of allowance and distribution. Upon receipt of a timely filed Proof of Claim, the Debtors or other party in interest may file a request for estimation along with its objection to the Claim set forth therein. The determination of Claims in Estimation Hearings will be binding for purposes of establishing the maximum

amount of the Claim for purposes of allowance and distribution. With respect to Tort Claims and Environmental Claims, determination of such Claims in Estimation Hearings will be binding only for purposes of voting and feasibility but not liquidation or distribution under the Plan. Procedures for specific Estimation Hearings, including provisions for discovery, will be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

**9.05** *Equal Treatment of Unsecured Claims Against Each Debtor.* For purposes of distributions to the Holders of Class 7 Unsecured Creditors, (a) all scheduled Claims on account of the same obligation or on account of a guaranty obligation and all Proofs of Claim filed against one or more of the Debtors on account of the same obligation or on account of a guaranty obligation shall be deemed to be duplicate Claims, shall be allowed against only one Debtor, and the duplicate Claims shall be disallowed in their entirety; and (b) all guarantees executed by one Debtor guaranteeing the obligations of another Debtor shall be deemed cancelled, annulled, and extinguished and no distributions shall be made under the Plan on account of any Claims based upon such guarantees.

**9.06** **De Minimis** *Distributions on Account of Allowed Class 7 Unsecured Claims.* To avoid the disproportionate expense and inconvenience associated with making *de minimis* distributions, the Reorganized Debtors will not be required to make, and will be excused from making, distributions in amounts of less than twenty-five dollars ($25.00) each to Holders of Allowed Class 7 Claims.

# Article 10
## CONDITIONS PRECEDENT

**10.01** *Condition Precedent to Confirmation of the Plan.* Entry of the Confirmation Order, effectiveness of Confirmation of the Plan, and the obligation of the Debtors to consummate this Plan are conditioned upon the Bankruptcy Court having made findings and determinations regarding this Plan as will enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan and in form and substance satisfactory to the Debtors.

**10.02** *Condition Precedent to Effective Date.* The Effective Date will not occur and the Plan will not be consummated until the Bankruptcy Court has entered the Confirmation Order in form and substance satisfactory to the Debtors on the Docket of the Reorganization Cases, no stay of the Confirmation Order is in effect, and 10 days have passed following the entry of the Confirmation Order and, if the tenth day following entry of such order is not a business day, the business day following the passage of 10 days has passed.

**10.03  *Waiver of Conditions Precedent.***  The Debtors may elect to waive any condition precedent set forth above that has not been satisfied on or before the date of the Confirmation Hearing.

## Article 11

### DISCHARGE, RELEASE, LIMITATION
### OF LIABILITY, AND GENERAL INJUNCTION

**11.01  *Discharge of Claims.***  Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order will operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of any and all Debts of, and Claims of any nature whatsoever against the Debtors that arose at any time prior to the Confirmation Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Without limiting the generality of the foregoing, on the Effective Date, the Debtors and the Reorganized Debtors, and their respective successors or assigns, will be discharged from any Claim or Debt that arose prior to the Confirmation Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, regardless of whether (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of a Claim, will be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtors, the Reorganized Debtors, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, Liabilities, or anything based upon any act, omission, document, instrument, transaction, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order will contain appropriate injunctive language to that effect. In accordance with the foregoing, except as specifically provided in the Plan or in the Confirmation Order, the Confirmation Order will be a judicial determination of the discharge of all such Claims and other Debts and Liabilities against the Debtors, pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, at any time, to the extent that such judgment relates to a discharged Claim, Liability or Debt. Notwithstanding the foregoing, if under the Plan the Reorganized Debtors are obligated to make payments to Holders of Allowed Claims, the Reorganized Debtors will remain obligated to make such payments. Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state, or local taxes) that do not file an application or other Bankruptcy Court-approved pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors,

or any of their respective Properties.

**11.02** *Exculpation from Liability.* **The Debtors, the Reorganized Debtors, their respective members, managers, employees, agents, representatives, accountants, attorneys, and Professionals (acting in such capacity), and their respective heirs, executors, administrators, successors, and assigns, will neither have nor incur any Liability whatsoever to any person or other entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Reorganization Cases; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. The rights granted under this Article 11 are cumulative with and not restrictive of any and all rights, remedies, and benefits that the Debtors, the Reorganized Debtors, and their respective agents have or obtain pursuant to any provision of the Bankruptcy Code. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.**

**11.03** **General Injunction**.

**Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, Liability or Membership Interest that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred from taking any of the following actions on account of any such discharged or terminated Claims, Debts, Liabilities, or Membership Interests, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtors and their respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors and their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtors, and their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtors. The Debtors shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its**

**implementation. Notwithstanding anything to the contrary contained herein, the provisions of this Article shall not release or be deemed a release of any of the Causes of Action.**

     **11.04** *Term of Certain Injunctions and Automatic Stay.* All injunctions or automatic stays provided for in the Reorganization Cases pursuant to Sections 105, 362, and/or other applicable provisions of the Bankruptcy Code or otherwise and in existence on the Confirmation Date will remain in full force and effect until the Effective Date. Any preliminary or permanent injunction entered by the Bankruptcy Court shall continue in full force and effect following the Confirmation Date and the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

     **11.05** **Injunction in Favor of Guarantors.**

     **As long as the Debtors are not in Default on the payments to CIT, Dunkin' Donuts, and Baskin-Robbins called for under the Plan, CIT, Dunkin' Brands, Dunkin' Donuts, and Baskin-Robbins shall be permanently enjoined and forever barred from taking any of the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Guarantors; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Guarantors; (c) creating, perfecting or enforcing any Lien or encumbrance against the Guarantors; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Guarantors; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Guarantors. The Debtors and the Guarantors shall have the right to independently seek enforcement of this injunction provision. This injunction provision is an integral part of the Plan and is essential to its implementation.**

     **11.06** *No Liability for Tax Claims.* Unless a taxing Governmental Authority has asserted a Claim against the Debtors before the Bar Date or Administrative Expense Claims Bar Date established with respect to such Claim, no Claim of such Governmental Authority will be Allowed against the Debtors or Reorganized Debtors for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the Debtors, any of their Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

     **11.07** *No Liability for Untimely Administrative Expense Claims.* Holders of Administrative Expense Claims (including Holders of any Claims for Postpetition Federal, state or local taxes) that do not file an application or other Bankruptcy Court-approved

pleading by the Administrative Expense Claims Bar Date will be forever barred from asserting such Administrative Expense Claims against the Debtors, the Reorganized Debtors, or any of their respective Properties.

# Article 12
## RETENTION OF JURISDICTION

**12.01** *General Retention.* Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Reorganization Cases are closed, the Bankruptcy Court will retain the fullest and most extensive jurisdiction of the Reorganization Cases that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

**12.02** *Specific Purposes.* In addition to the general retention of jurisdiction set forth in §12.01, after Confirmation of the Plan and until the Reorganization Cases are closed, the Bankruptcy Court will retain jurisdiction of the Reorganization Cases for the following specific purposes:

      (a)    to allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense, and to determine any and all objections to the allowance or priority of Claims or Membership Interests;

      (b)    to determine any and all cases, controversies, suits or disputes arising under or relating to the Plan or the Confirmation Order (including regarding the effect of any release, discharge, or injunction provisions provided for herein or affected hereby and regarding whether conditions to the consummation and/or Effective Date of the Plan have been satisfied) and to enforce the obligations under the Plan;

      (c)    to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Reorganization Cases; provided, however, that this retention of jurisdiction will not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals after Confirmation of the Plan unless an objection to such fees and expenses has been made by the Debtors or the Reorganized Debtors;

      (d)    to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption or assignment of executory contracts or unexpired leases to which the Debtors are a party or with respect to which the Debtors may be liable (including Assumed Contracts), and to determine the allowance of any Claims resulting from the rejection thereof or any amount necessary to cure defaults in any assumed and/or assigned

executory contracts or unexpired leases (including Assumed Contracts), including Cure Claims;

(e)     to determine any and all motions, applications, adversary proceedings, contested or litigated matters, causes of action, and any other matters involving the Debtors or Reorganized Debtors commenced in connection with, or arising during, the Reorganization Cases and pending on the Effective Date, including approval of proposed settlements thereof;

(f)     to enforce, interpret, and administer the terms and provisions of the Plan and the Plan Documents;

(g)     to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

(h)     to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtors or the Estates;

(i)     to assure the performance by Reorganized Debtors of its obligations to make distributions under the Plan;

(j)     to correct any defect, cure any omission, reconcile any inconsistency, and make any other necessary change or modification in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

(k)     to resolve any disputes concerning any release of a nondebtor under the Plan or the injunction against acts, employment of process, or actions against such nondebtor arising under the Plan;

(l)     to enforce all orders, judgments, injunctions, and rulings entered in connection with the Reorganization Cases;

(m)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

(n)     to review and approve any sale or transfer of assets or Property by the Debtors or the Reorganized Debtors, including prior to or after the date of the Plan,

and determine all questions and disputes regarding such sales or transfers;

(o)     to determine all questions and disputes regarding title to the assets of the Debtors, the Estates, or the Reorganized Debtors;

(p)     to determine any motions or contested matters relating to the Causes of Action, whether brought before or after the Effective Date;

(q)     to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtors arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

(r)     to resolve any determinations which may be requested by the Debtors or the Reorganized Debtors of any unpaid or potential tax liability or any matters relating to unpaid or potential tax liability under Sections 505 and 1146(d) of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion of taxable year ending on or before the Effective Date;

(s)     to issue injunctions, enter, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(t)     to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(u)     to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Documents;

(v)     to enter such orders as are necessary to implement and enforce the injunctions described in this Plan;

(w)     to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

(x)     to enter an order concluding and terminating the Reorganization Cases.

**12.03  *Closing of the Reorganization Cases.***  In addition to the retention of jurisdiction set forth in §§12.01 and 12.02 above, the Bankruptcy Court will retain jurisdiction of the Reorganization Cases to enter an order reopening the Reorganization Cases after they have been closed.


# Article 13
## MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTION

**13.01  *Modification Prior to Entry of Confirmation Order.***  The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable requirements of the Bankruptcy Code and the Bankruptcy Rules.  The Plan may not be altered, amended or modified without the written consent of the Debtors or the Reorganized Debtors.

**13.02  *Modification After Entry of Confirmation Order.***  After the entry of the Confirmation Order, the Debtors or the Reorganized Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtors or the Reorganized Debtors may obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and (b) such modification will not materially adversely affect the interests, rights, treatment, or distributions of any Class of Allowed Claim or Allowed Equity Interest under the Plan.

**13.03  *Modification After Confirmation Date.***  After the Confirmation Date and before substantial consummation of the Plan, the Debtors or the Reorganized Debtors may modify the Plan in a way that materially adversely affects the interests, rights, treatment, or distributions of a Class of Claims or Membership Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements; (b) the Debtors or the Reorganized Debtors obtain Bankruptcy Court approval for such modification, after notice and a hearing; (c) such modification is accepted by at least two-thirds ($\frac{2}{3}$) in amount, and more than one-half ($\frac{1}{2}$) in number, of Allowed Claims or Allowed Membership Interests voting in each Class adversely affected by such modification; and (d) the Debtors or the Reorganized Debtors comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

**13.04  *Confirmation Over Objections.***  In the event that any Class of Claims or Membership Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with §14.02, the Debtors request, and will be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2)(B) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or

reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtors may make such modifications or amendments to the Plan and such modifications or amendments will be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice of the Confirmation Hearing. No such modifications will require any resolicitation of acceptances as to the Plan by any Class of Claims or Membership Interests unless the Bankruptcy Court will require otherwise. Notwithstanding any provision of the Plan to the contrary, the Debtors reserve any and all rights they may have to challenge the validity, perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

# Article 14
## MISCELLANEOUS PROVISIONS

**14.01** *No Admissions.* The Plan provides for the resolution, settlement and compromise of Claims against and Membership Interests in the Debtors. Nothing herein will be construed to be an admission of any fact or otherwise binding upon the Debtors in any manner prior to the Effective Date.

**14.02** *Revocation or Withdrawal of the Plan.* The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan will be deemed null and void in all respects, and nothing contained in the Plan will be deemed (a) to constitute a waiver or release of any Claims by or against, or Membership Interests in, the Debtors or any other Person or (b) to prejudice in any manner the rights of the Debtors or any other Person in any further proceedings involving the Debtors.

**14.03** *Settlement of Claims and Causes of Action.* The Reorganized Debtors may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any claim or Cause of Action which the Debtors in Possession had or had power to assert immediately prior to the Confirmation Date and may settle or adjust such claim or Cause of Action.

**14.04** *Standard for Approval by Bankruptcy Court.* If any of the matters described in this Plan is brought for approval before the Bankruptcy Court, any such approval will mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor in possession.

**14.05** *Further Assurances.* The Debtors or the Reorganized Debtors agree and are authorized to execute and deliver any and all papers, documents, contracts, agreements, and instruments that may be necessary to carry out and implement the terms and conditions of the Plan.

**14.06** *Headings.* The headings and table of contents used in the Plan are for convenience and reference only and will not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**14.07** *Notices.* All notices, requests, or other documents in connection with or required to be served by the Plan will be in writing and will be sent by first class United States mail, postage prepaid, or by overnight delivery by a recognized courier service, to:

    (a)    If to the Debtors or the Reorganized Debtors:

> **ALPHAROCK LLC ET. AL**
> Attention: David J. Daly
> 12A Mica Lane
> Wellesley, MA 02481

> with a mandatory copy to:

> Edward J. Peterson, III, Esquire
> Amy Denton Harris, Esquire
> **STICHTER, RIEDEL, BLAIN & PROSSER, P.A.**
> 110 East Madison Street, Suite 200
> Tampa, Florida 33602

    (b)    If to CIT:

> W. Keith Fendrick, Esquire
> **HOLLAND & KNIGHT, LLP**
> 100 N. Tampa Street, Suite 4100
> Tampa, Florida 33602

    (c)    If to Dunkin' Donuts, Baskin-Robbins, or Dunkin' Brands:

> Paul D. Watson, Esquire
> **SIVYER BARLOW & WATSON, P.A.**
> 401 E. Jackson Street, Suite 2225
> Tampa, Florida 33602

**14.08** *Contemporaneous Service.* Copies of all notices under this Plan to any party will be given to the Debtors and the Reorganized Debtors (as the case may be) contemporaneously with the giving of notice to such party.

**14.09  *Changes of Address.*** Any entity may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court and serving same on the parties set forth above.

**14.10  *Governing Law.*** Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or to the extent that the Plan or the provision of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan will be governed by, construed, and enforced in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**14.11  *Limitation of Allowance.*** No attorney's fees, punitive damages, penalties, special damages, lost profits, treble damages, exemplary damages, or interest will be paid with respect to any Claim or Equity Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court.

**14.12  *Estimated Claims.*** To the extent that any Claim is estimated for any purpose other than for voting, then in no event will such Claim be Allowed in an amount greater than the estimated amount.

**14.13  *Consent to Jurisdiction.*** Upon any default under the Plan, the Debtors and the Reorganized Debtors consent to the jurisdiction of the Bankruptcy Court or any successor to the Bankruptcy Court and agree that it will be the preferred forum for all proceedings relating to any such default. By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by filing any Cure Claim, by voting on the Plan, or by entering an appearance in the Reorganization Cases, all Creditors and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and will be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Reorganization Cases, including the matters and purposes set forth in Article 12 of the Plan. The Bankruptcy Court will maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 12 of the Plan.

**14.14  *Setoffs.*** Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtors may, but will not be required to, set off against any Claim and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors of any such claim that the Debtors may have against such Holder.

**14.15  *Successors and Assigns.*** The rights, benefits, duties, and obligations of any Person named or referred to in the Plan will be binding upon and will inure to the benefit of any heir, executor, administrator, successor, or assign of such Person.

**14.16  *No Interest.***  Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim will be entitled to the accrual of Postpetition interest or the payment of Postpetition interest, penalties, or late charges on account of such Claim for any purpose.

**14.17  *Modification of Payment Terms.***  The Reorganized Debtors reserve the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**14.18  *Entire Agreement.***  The Plan and Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.  No Person will be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

**14.19  *Severability of Plan Provisions.***  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been

altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.20  *Confirmation Order and Plan Control.***  To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtors and any third party, unless otherwise expressly provided in the Plan, the Plan controls the Disclosure Statement and any such agreements, and the Confirmation Order (any and other orders of the Court) will be construed together and consistent with the terms of the Plan.

**14.21  *Computation of Time.***  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ALPHAROCK LLC**
**ALPHA 300952 LLC**
**ALPHA 301419 LLC**
**ALPHA 330453 LLC**
**ALPHA 331290 LLC**
**ALPHA 332002 LLC**
**ALPHA 332003 LLC**
**ALPHA 335407 LLC**
**ALPHA 340479 LLC**
**ALPHA 340986 LLC**
**ALPHA 341164 LLC**
**ALPHA 341222 LLC**
**ALPHA 341223 LLC**
**ALPHA 341938 LLC**
**ALPHA 341948 LLC**
**ALPHA 343785 LLC**
**ALPHA 344058 LLC**
**ALPHA 344304 LLC**
**ALPHA 344768 LLC**
**ALPHA 344825 LLC**
**ALPHA 345156 LLC**
**ALPHA 346802 LLC**
**ALPHA CML LLC**

By: _____
David J. Daly
Managing Member, AlphaRock, LLC

By: _____
William P. Daly, Sr.
Managing Member, AlphaRock, LLC

*/s/ Edward J. Peterson*
Edward J. Peterson, III (FBN 0014612)
Amy Denton Harris (FBN 0634506)
**STICHTER, RIEDEL, BLAIN & PROSSER, P.A.**
110 East Madison Street, Suite 200
Tampa, Florida 33602
Telephone: (813) 229-0144
Facsimile: (813) 229-1811
**EMAIL:** EPETERSON@SRBP.COM
          AHARRIS@SRBP.COM
**ATTORNEYS FOR DEBTORS**

# Exhibit "A"
## Executory Contracts and Unexpired Leases to be Assumed

### Nonresidential Real Property Leases:

1.     Lease by and between Alpha 301419 LLC and John P. Toale, Jr. and Harriett P. Toale for the commercial real property located at 2495 McCall Road, Englewood, FL 34224, as modified by agreement of the parties.

2.     Lease by and between Alpha 341938 LLC and George Mitchell for the commercial real property located at 2517 Tamiami Trail, Punta Gorda, FL 33950.

3.     Lease by and between Alpha 332002 LLC and Pik 'N Run #5, Inc. for the commercial real property located at 20101 Peachland Boulevard, Port Charlotte, FL 33954, as modified by agreement of the parties.

4.     Lease by and between Alpha 332003 LLC and Pik 'N Run, Inc. for the commercial real property located at 3190 Tamiami Trail, Port Charlotte, FL 33952, as modified by agreement of the parties.

5.     Lease by and between Alpha 335407 LLC and Pik 'N Run, Inc. for the commercial real property located at 829 Tamiami Trail, Port Charlotte, FL 33592, as modified by agreement of the parties.

6.     Lease by and between Alpha 343785 LLC and Sun Glo Properties, Inc. for the commercial real property located at 8445 Tamiami Trail, Sarasota, FL 34238, as modified by agreement of the parties.

7.     Lease by and between Alpha 340986 LLC and 4420 South Trail Corp. for the commercial real property located at 300 Washington Blvd. North, Sarasota, FL 34236.

8.     Lease by and between Alpha 340479 LLC and Gateway Retail Associates, LLLP for the commercial real property located at 5871 Fruitville Road, Sarasota, FL 34232, as modified by agreement of the parties.

9.     Lease by and between Alpha 341223 LLC and W.M. Harmon & Partners for the commercial real property located at 1575 South Tamiami Trail, Sarasota, FL 34237.

10.     Lease by and between Alpha 300952 LLC and Rex S. Horton for the commercial real property located at 1801 South Tamiami Trail, Venice, FL 34285, as modified by agreement of the parties.

11.     Lease by and between Alpha 341222 LLC and KMS II, L.L.C. for the commercial real property located at 5641 Clark Road, Sarasota, FL 34233, as modified by agreement of the parties.

12.     Lease by and between Alpha 344825 LLC and B&K Properties of FL., L.L.C. for the commercial real property located at 7305 53rd Avenue East, Bradenton, FL 34203.

13.     Lease by and between Alpha 345156 LLC and Lena Place, L.L.C. for the commercial real property located at 6220 SR 64, Bradenton, FL 34209, as modified by agreement of the parties.

14.     Lease by and between Alpha 330453 LLC and Two Star Enterprise for the commercial real property located at 900 Kings Highway, Punta Gorda, FL 33980.

15.     Lease by and between Alpha 346802 LLC and Lorraine Corners NW, LLC for the commercial real property located at 14405 SR 70 East, Unit 101 Bradenton, FL 34202, as modified by agreement of the parties.

16.     Lease by and between Alpha CML LLC and KMS II, L.L.C. for a portion of the commercial real property located at 5275 Duncan Road, Highway 17, Punta Gorda, FL 33982, as modified by agreement of the parties.

17.     Lease by and between AlphaRock LLC and Daly Cavanaugh LLP for a portion of the commercial real property located at 12A Mica Lane, Wellesley, MA 02481.

**Franchise Agreements:**

1.     Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 301419 LLC dated as of August 23, 2007, as may have been amended from time to time.

2.     Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 341938 LLC dated as of August 23, 2007, as amended by that certain Amendment to Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC, on the one hand, and Alpha 341938 LLC, on the other hand, dated as of January 30, 2009, as may have been further amended from time to time.

3.     Temporary Operating Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 332002 LLC dated as of August 23, 2007, as may have been amended from time to time.

4.     Temporary Operating Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 332003 LLC dated as of August 23, 2007, as may have been amended from time to time.

5. Temporary Operating Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 335407 LLC dated as of August 23, 2007, as may have been amended from time to time.

6. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 343785 LLC dated as of August 23, 2007, as may have been amended from time to time.

7. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 340986 LLC dated as of August 23, 2007, as may have been amended from time to time.

8. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC and Alpha 340479 LLC dated as of August 23, 2007, as amended by that certain First Amendment to Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC, on the one hand, and Alpha 340479 LLC, on the other hand, dated as of January 30, 2009, as may have been further amended from time to time.

9. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 341223 LLC dated as of August 23, 2007, as amended by that certain Amendment to Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC, on the one hand, and Alpha 341223 LLC, on the other hand, dated as of January 30, 2009, as may have been further amended from time to time.

10. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Baskin-Robbins Franchising LLC and Alpha 300952 LLC dated as of August 23, 2007, as amended by that certain Test Agreement by and between Baskin-Robbins Franchised Shops LLC or Baskin-Robbins Franchising LLC and Alpha 300952 dated as of September 30, 2008, as may have been further amended from time to time.

11. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 341222 LLC dated as of August 23, 2007, as may have been amended from time to time.

12. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 344825 LLC dated as of August 23, 2007, as may have been amended from time to time.

13. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 345156 LLC dated as of August 23, 2007, as may have been amended from time to time.

14. Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 330453 LLC dated as of August 23, 2007, as may have been amended from time to

time.

      15.     Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha 346802 LLC dated as of August 23, 2007, as may have been amended from time to time.

      16.     Franchise Agreement by and between Dunkin' Donuts Franchising LLC and Alpha CML LLC (PC # 339498) dated as of August 23, 2007, as may have been amended from time to time.

**Other Contracts/Leases:**

1.      Vehicle Lease Agreement with Hitachi Capital America Corp.

2.      Any and all agreement(s) by and between the National DCP, LLC and one or more of the Debtors.

3.      Any and all agreement(s) by and between Dunkin' Donuts Northeast Distribution Center, Inc.

4.      Any and all agreement(s) by and between Dunkin' Donuts Southeast Distribution Center, Inc. and one or more of the Debtors including, without limitation, Purchase Commitment Agreements.

5.      Product Supplier Agreement by and between Alpha CML LLC and Boston Coffee, Inc./D.N. McNulty, Inc. and/or David McNulty dated as of May 16, 2008.

6.      Product Supplier Consent Agreement by and between Alpha CML LLC, Boston Coffee, Inc./D.N. McNulty, Inc. and/or David McNulty, and Dunkin' Donuts Franchising LLC dated as of May 15, 2008.

7.      Rental Agreement by and between Ryder and Alpha CML LLC c/o Barrock Capital.

8.      Agreement by and between EcoLab and one of the Debtors for pest control services at 5275 Duncan Road, Highway 17, Punta Gorda, Florida 33982.

9.      Agreement(s) for wireless telephone service by and between Verizon Wireless and one or more of the Debtors.

10.      Agreement(s) by and between Gulf Coast Security and one or more of the Debtors for security monitoring at 2495 McCall Road, Englewood, Florida 34224; 14405 SR 70 East, Unit 101, Bradenton, Florida 34202; and 812 62nd Street, Circle East, #101, Bradenton, Florida 34209.

11.      Agreement(s) by and between ADP and one or more of the Debtors for payroll related services.

12.      Agreement(s) by and between SEI and one or more of the Debtors for maintenance and related services associated with the Radiant cash register system.

13.      Agreement(s) by and between NTIC and one or more of the Debtors for high speed internet service at all of the Debtors' operating Restaurants.

14.      Agreement(s) by and between Chase Merchant Services and one or more of the Debtors for debit/credit card processing services.

15. Agreement(s) by and between Cummins and one or more of the Debtors for back-up power generation at 5275 Duncan Road, Highway 17, Punta Gorda, Florida 33982.

16. Agreement(s) by and between Suburban Propane and one or more of the Debtors.

17. Agreement(s) by and between Waste Management and one ore more of the Debtors for waste disposal services.

18. Any and all agreements by and any insurer and one or more of the Debtors for insurance coverage.