UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re

ALPHAROCK LLC, et al.,                    CASE NO. 8:09-bk-11888-CPM

        Debtors.
_____/

### CIT GROUP/EQUIPMENT FINANCING, INC.'S RESPONSE TO DEBTOR'S MOTION FOR RECONSIDERATION OF MAY 14, 2010 ORDER RESCHEDULING CONFIRMATION HEARING

CIT Group/Equipment Financing, Inc. ("CIT") files this response to Debtor's Motion for Reconsideration of May 14, 2010 Order Rescheduling Confirmation Hearing (Docket #425) (the "Motion") and states:

1.      The Motion argues nothing new on the Debtor's part; it simply restates the same arguments the Debtor unsuccessfully made before this Court on May 12, 2010. As such, the Motion should be denied.

2.      Interestingly, the Debtor continues to avoid the issue CIT raised in communications with Debtor's counsel and before this Court at the hearing held on CIT's Request for a Status Conference (Docket # 408): did the Debtor intentionally mean to leave out prior language that stated CIT's loan documents were being amended and instead intend the Plan be the loan documents without discussing the issue with CIT?

3.      It has been CIT's belief that what was at issue in this case was a scrivener's error which could be easily remedied by insertion of language in the Confirmation Order to the effect that CIT's existing loan documents were being amended as set forth in the confirmed plan. That

belief seems to be supported by the final paragraph of Section 5.04 of the current plan [Docket #

407] which the Debtor seeks to have confirmed. The relevant paragraph reads as follows:

> The Debtor's obligations to pay CIT in accordance with this Section 5.04 shall be the sole payment obligations of the Debtor to CIT and shall supersede and replace the payment obligations as set forth **in the existing CIT loan documents**. Class 2 is impaired [emphasis added].

4.      In the April 29, 2010 transcript attached to the Motion, nowhere does the Debtor

or CIT tell the Court part of the agreement is the extinguishing of CIT's existing loan documents.

5.      Nowhere in the communications (which were in the nature of settlement

negotiations and communications and should not have been attached to the Motion) used by the

Debtor is there any mention of extinguishing CIT's loan documents.

6.      The Debtor pushed for filing the Third Amended Plan of Reorganization no later

than Friday evening, April 30, 2010, and CIT worked to try to meet that goal by keeping two

CIT employees in Tampa until Friday night, even though the Debtor's representatives and

principals left Tampa more than a day earlier. Almost all the discussions from April 28 through

April 30, 2010 had to do with the Plan's payment terms, excess cash payments, and calculations

of balloon payments.

7.      At the May 12, 2010 status conference, counsel for Debtor stated that it was

Monday, May 3, 2010, when counsel for CIT brought up the issues of the missing loan

documents. That would be correct, although it was actually Saturday morning at 4:23 a.m. when

CIT e-mailed CIT's counsel to note the issue regarding amending the loan documents. In any

event, the issue was raised the first work day after the Third Amended Plan was filed with the

Court. A copy of the May 12, 2010 Transcript is attached as Exhibit "A."

8.     There can be no argument made by the Debtor that it had an agreement with CIT to extinguish CIT's loan documents, because the topic was never even discussed between the parties.

9.     The Plan which the parties came into court on April 29, 2010, to inform the Court was being modified, as set forth in the April 29, 2010 transcript, contained the following language at 5.04(a) "...the existing CIT loan documents shall be modified," and at 5.04(b) "...the existing CIT loan documents shall be modified."

10.     The Third Amended Plan cannot be confirmed without a confirmation hearing, because it does not contain the agreement reached between the parties.

11.     For the reasons set forth above and previously made by this Court at the May 12, 2010 hearing, the Motion should be denied.

WHEREFORE, premises considered, CIT requests the Court deny the Motion.

/s/  W. Keith Fendrick
W. Keith Fendrick
HOLLAND & KNIGHT LLP
Florida Bar No. 612154
100 North Tampa Street, Suite 4100
Tampa, FL 33602
keith.fendrick@hklaw.com
(813) 227-6707     Fax: (813) 229-0134
Attorney for The CIT Group/Equipment Financing, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by either the Court's electronic notification system, email, or by U.S. mail this 2nd day of June, 2010, to:

*Debtor, Debtor's Attorney, U.S. Trustee*

Dunkin Donuts Franchising, LLC
Attn: Donna Pelissier, Contract
Administrator
130 Royall St.
Canton, MA 02021

Baskin-Robbins Franchising, LLC
Attn: Donna Pelissier, Contract
Administrator
130 Royall St.
Canton, MA 02021

Dunkin Brands, Inc.
Attn: Donna Pelissier, Contract
Administrator
130 Royall St.
Canton, MA 02021

The CIT Group/Equipment
 Financing, Inc.
Brian R. St. James, Esquire
One CIT Drive
Livingston, NJ 07039


 /s/   W. Keith Fendrick

4

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

```
- - - - - - - - - - - - - - - - -x
IN RE:                           :
                                 :
ALPHAROCK, LLC,                  : Case No. 09-11888-8C1
                                 : Chapter 11
                Debtor           :
- - - - - - - - - - - - - - - - -x
```

> U.S. Courthouse
> 801 N. Florida Avenue
> Tampa, Florida
> May 12, 2010
> 11:38 A.M.

## HEARING

### Status Conference

**B E F O R E:  THE HONORABLE CATHERINE PEEK MCEWEN**
**            Bankruptcy Judge**

**JOHNSON TRANSCRIPTION SERVICE**
**7702 Lake Cypress Drive**
**Odessa, Florida  33556**
**(813) 920-1466**

EXHIBIT

A

**APPEARANCES:**

For the Debtor:                              EDWARD PETERSON, Esquire


For CIT Group:                              KEITH FENDRICK, Esquire

Dunkin' Donuts Franchising, LLC,
Baskin-Robbins Franchising, LLC,:   PAUL WATSON, Esquire


**Also Present:**
Debtor Representatives:
(In Courtroom)                             William Daly, Sr.
                                           David Daly


(Telephonic)                               Paul Cavanaugh
                                           Joseph Bodoff

## P R O C E E D I N G S

COURTROOM DEPUTY: Alpharock, Case Number 09-11888.

THE COURT: All right. The Court will take appearances, by phone first, please. Please, if you're on speaker phone, put it into a handset. I'm assuming that we're on land lines and not cell phones. So we'll take appearances from those that are on the phone. Go ahead.

MR. BODOFF: Joseph Bodoff on behalf of William Daly, Sr., William Daly, Jr., Elizabeth Brulport, and Thomas Daly.

THE COURT: All right. Thank you. And?

MR. CAVANAUGH: Paul Cavanaugh, member Alpharock.

THE COURT: All right. Thank you. And in the courtroom?

MR. PETERSON: Good morning, Your Honor, Edward Peterson on behalf of the Alpharock Debtors, and with me are David Daly and Bill Daly, Sr.

THE COURT: All right. Thank you. And?

MR. FENDRICK: Good morning, Your Honor, Keith Fendrick on behalf of CIT Group Equipment Financing.

THE COURT: Thank you. And?

MR. WATSON: Good morning, Your Honor, Paul Watson on behalf of Dunkin' Donuts Franchising, LLC, and Baskin-Robbins Franchising, LLC.

THE COURT: All right. Thank you. Mr. Wilkes was in

the courtroom. He asked to be excused to attend an
emergency hearing in the courtroom next door, so the
United States Trustee briefly made an appearance before we
gathered those on the phone.

All right. We're here for a status conference on
something.

MR. FENDRICK: Yes, Your Honor. Well, it's a status
conference (A) to tell you why we haven't consented to the
entry of that order yet and to perhaps seek the wisdom of
the Court, and to let you know where we are,
unfortunately, 12 days after we thought we were done with
the case.

From CIT's perspective, Your Honor, it's the lack of
inclusion of a phrase in the Confirmation Order that has
required us to withhold consent to Miss Garcia to have to
go ahead and enter the order.

THE COURT: And what is it?

MR. FENDRICK: The phrase is: "CIT's existing loan
documents are modified and amended as set forth in the,"
and then whatever the correct title of this Plan of
Reorganization is.

THE COURT: I thought that the -- I'll have to look
at the transcript. But I thought that the intent was to
execute new loan documents.

MR. FENDRICK: Actually, I went back and looked at

the transcript.  That was your question, Judge; it was
never discussed between the parties.  You actually asked
that question that morning.

THE COURT:  Well, who answered it?

MR. FENDRICK:  I just -- nobody.  You just said:
You're going to have existing loan -- new existing loan
documents.  We went back, we don't need new loan documents
for CIT.

THE COURT:  Okay.  So then --

MR. FENDRICK:  CIT doesn't have to report this as a
new loan.  It just does a change the payment terms.

THE COURT:  Okay.  Then why is it that that phrase is
offensive, then?  It seems to me that --

MR. FENDRICK:  The other reason:  We have 42 or 44
different loan documents in this deal because we have
loans to each of these Debtors, and this is only a
procedurally consolidated case, administratively
consolidated.  So we'd also have to -- I don't know why
it's offensive.  I've asked that question:  Why can't we
just include that phrase?

That phrase was in every Plan, so that you know,
until the last Plan was filed.  Every Plan said, "CIT's
loan documents are modified as set forth herein," so I
don't know why it's offensive.

THE COURT:  Well, how was the -- how is it that the

loan documents are going to evidence the debt for future

suit purposes should there be a default?  What is it that

you would file as a complaint if you were going to sue on

the debt as recharacterized?

MR. PETERSON:  The Amended Plan and the Confirmation

Order.

THE COURT:  So there are no loan documents?  No

evidences of perfection?  No guarantees?

MR. PETERSON:  There are guarantees.

THE COURT:  No events of default described?

MR. PETERSON:  It's all in the Plan.

THE COURT:  No notice provisions?  None of the

traditional things that would be in a loan document?

MR. PETERSON:  Judge, we were here announcing the

settlement.  There was never a discussion of all the old

provisions were being incorporated into the Plan.

THE COURT:  Well, what are the provisions?  Y'all are

going to have to recreate them for me.  I want to see all

the typical things that would be in a loan document:  The

notice provision, the default provision, the cure

provision, the -- if there's a default rate or not a

default rate.

MR. FENDRICK:  Your Honor, the problem is it will be

the same documents.  That's why this doesn't make sense

because we would have to go back to the UCC searches on

1    17, 18, 19 entities; I don't know how many.  I like the

2    fact that our documents are perfected or our security

3    interest is perfected as of the date they were filed.

4    This was never discussed.

5        Every Plan, including the Plan we came in here and

6    announced the changes to the Plan -- what we announced to

7    you were the changes that we agreed to to the Plan filed

8    that Monday; we announced them I think on Thursday.  That

9    Plan filed on Monday included the language.

10       THE COURT:  Okay.  So who's digging in their heels?

11   Really?

12       MR. FENDRICK:  Judge, I've asked the question:

13   What's wrong with the loan documents?  Tell me what it is

14   in the loan documents you don't like.  I don't have an

15   answer to that ten days later.

16       MR. PETERSON:  We went back to our offices -- and if

17   you look at the transcript, all this was to be put into a

18   Third Amended Plan.  We went back to our offices --

19       THE COURT:  Just the changes.  I didn't say change

20   the old Plan, just add the new stuff so there's one

21   document that we can look to so that we don't have to pull

22   up this document, this supplement, this supplement, put

23   them all together and say, okay, this paragraph goes here,

24   this one goes there.

25       MR. FENDRICK:  And why I thought until now --

1    THE COURT:  We'll just have another confirmation

2    hearing and we'll have to have an evidentiary hearing on

3    what the terms are of the loan.

4    MR. FENDRICK:  But, Judge, I thought -- I just want

5    to say this so that you don't think -- how this came

6    about.  I thought it was a scrivener's error because the

7    original redline we got was redlined back against that

8    December 22nd Plan.  And I just thought it wasn't a big

9    deal, let's just put the language back in.

10   Edward, you dropped it -- when you dropped the

11   descriptions of all the people, and don't amend your Plan,

12   we don't care about your Plan, leave the Plan as it is,

13   just put it in the Confirmation Order.

14   THE COURT:  Okay.  Obviously, then, I misapprehended.

15   I had a legal error in not having a record on what the

16   terms, the exact terms, all the terms are that the parties

17   agreed to.  So we have to have another hearing.

18   MR. FENDRICK:  But what I want to hear, Judge, is

19   that the Debtor says that they intended -- and this is

20   what I've been asking for, was it their intent --

21   THE COURT:  We'll have a hearing.

22   MR. FENDRICK:   -- that there be no loan documents?

23   THE COURT:  Mr. Fendrick, we'll have a hearing.  And

24   their intent and what it is that they propose and what it

25   is that you accept, we obviously -- I made an error of

1   law.  I thought that we had a complete record.  We don't.

2   MR. FENDRICK:  Well, I don't even know if we have an

3   agreement if that's the case.

4   THE COURT:  Then that would be an additional reason

5   to have another hearing.  So how much time do we need?

6   MR. PETERSON:  Your Honor, just so it's clear, I sent

7   redlines of the Plan striking out that language, because

8   the deal subsequently changed after we were here at the

9   hearing.  CIT raised another issue.  We said:  Okay.

10  THE COURT:  No one ever said that the loan documents

11  go away.  You can't have a commercial loan without having

12  the full book.  I mean, it's really a book when you have

13  these closings.  If someone had told me that we envision

14  that the book goes away and it's only going to be what the

15  judge in her, you know, inarticulate way says on the

16  record that that's the loan documents, I would never have

17  said that --

18  MR. PETERSON:  Well, the payment terms are set forth

19  in the Plan.  Their security interest is set forth in the

20  Plan.  They raised -- Mr. Fendrick subsequently raised

21  specific issues regarding payment of insurance, payment of

22  taxes.

23  THE COURT:  We didn't discuss those.  And so --

24  MR. PETERSON:  We agreed to put those in there.  I

25  don't know what else they want.

1        MR. FENDRICK:  Judge, they're in the loan documents.

2   The point is, we have a security interest, we have --

3        THE COURT:  I don't want to argue anymore.  We're

4   going to have a hearing.

5        MR. FENDRICK:  I understand.  I'm telling you, that's

6   the status.  That's why we're here.  That's the status.

7        THE COURT:  We'll have a hearing.  The proffer will

8   be made.  We'll go through the typical check list of what

9   loan documents should have, and you can say:  This is in

10  there, this is offered, this is not offered, this is

11  offered, this is not offered, if that's the way you're

12  going to do it.  And then we'll see whether they accept

13  that method and want to agree to the deal or don't want to

14  agree to the deal.

15       MR. FENDRICK:  Thank you.

16       THE COURT:  So, Miss Garcia, we need about a half a

17  day.

18       You don't want to wake up the now sleeping gorilla,

19  the tranquil gorilla, but you've just done that.

20       MR. PETERSON:  Your Honor, the other issue out there

21  is:  I'm hopeful that this funding of the million dollars

22  for CIT is going to be there, but if this continues to

23  drag on, I don't know.

24       THE COURT:  Well, then we're going to be back to

25  where we were with me making the decision about the

releases, the discharge, and all that stuff.

COURTROOM DEPUTY: June 8th is the soonest I have.

THE COURT: June 8th it is. How much time do you have?

COURTROOM DEPUTY: All afternoon.

THE COURT: Are you going to be able to make the showing, in case CIT doesn't want to agree to whatever it is that was really offered for the, quote, "new loan," close quote, in case CIT doesn't accept that, to make the showing necessary to justify the third-party releases?

MR. PETERSON: On June 8th?

THE COURT: Yep.

MR. PETERSON: Let me make sure I understand.

THE COURT: A half day.

MR. PETERSON: The hearing on the 8th is specifically about what?

THE COURT: We have to start over again. You're going to have to make the proffer on what it is that you're offering CIT as a settled, consensual resolution. If they don't take it, then we're back to the issues that we had before, which include the third-party release, the good faith. Those were the primary ones. I don't need to recite all the things that were --

MR. FENDRICK: Well, I mean, that would go back to the whole two days of confirmation hearing again.

1      THE COURT:  I understand.

2      MR. FENDRICK:   Yeah.  I mean, that would go back to,

3  okay, now CIT puts its case on.

4      THE COURT:  I understand.

5      MR. FENDRICK:  Okay.

6      MR. PETERSON:  In the Debtor's mind, the issue is

7  whether we had a deal.  And I have e-mails, redlines, Mr.

8  Fendrick telling me to submit the Confirmation Order.

9      THE COURT:  But we've never -- it's never been where

10  the Confirmation Order supplants all the boilerplate and

11  the details that go in a loan -- commercial loan

12  transaction.

13      MR. FENDRICK:  Judge, we operated under the thought

14  that our loan documents are just being amended as all the

15  other Plans said.

16      THE COURT:  If that was in the Plan -- I mean, it was

17  in the Plan.  You didn't say:  And I'm taking out this

18  sentence to mean --

19      MR. FENDRICK:  Correct.

20      THE COURT:  -- that the loan documents are no longer

21  in existence but amended.  I'm sure that that's not in any

22  e-mail.  I'm sure it's not.  And I'm sure it's not on the

23  docket.

24      MR. PETERSON:  The redlines showing the striking of

25  it is in every e-mail.

1          THE COURT:  That's post hearing.

2          MR. PETERSON:  Other things were changed post

3     hearing.  I mean, we went back to the table.  CIT --

4          MR. FENDRICK:  Other things were discussed --

5          MR. PETERSON:  -- raised other issues as well.

6          THE COURT:  Well, then we don't --  then you don't

7     have a deal.  It broke down.

8          MR. FENDRICK:  That's right, Judge.

9          THE COURT:  It broke down.  What else do you have

10    after June the 8th, Miss Garcia?

11         COURTROOM DEPUTY:  I don't without moving something.

12         THE COURT:  What can we move?

13         COURTROOM DEPUTY:  How much time do you --

14         THE COURT:  Well, we set aside three days.  We took a

15    half a day.  Well, we had set aside two and a half days.

16    We consumed a half a day.  That record is still already of

17    record.  We can pick up where we left off.  So we need two

18    days.  You can move some things.

19         (The Court and the courtroom deputy discuss the

20    Court's calendar.)

21         MR. FENDRICK:  I mean, Judge, I hate to do the

22    splits, but I'd just like to get it done, even if we have

23    to do one day and then another day.  I'd like to get it

24    done.  I mean, this -- CIT doesn't understand the

25    situation, and I'd like to get it done.  I'm tired or

1    reporting.

2    COURTROOM DEPUTY:  We can do all day July 6th, half a

3    day July 7, and all day July 8.

4    THE COURT:  Okay.  What is it?  Half a day --

5    COURTROOM DEPUTY:  July 6th -- excuse me -- all day

6    July 6th.

7    THE COURT:  Okay.  Good.

8    COURTROOM DEPUTY:  The morning of July 7.

9    THE COURT:  Okay.

10   COURTROOM DEPUTY:  And all day July 8.

11   THE COURT:  Why don't we just do all day July 6th and

12   July 8th?

13   COURTROOM DEPUTY:  That's fine.

14   THE COURT:  We already gave them a half a day.

15   COURTROOM DEPUTY:  You mean including the June 8th?

16   THE COURT:  No.  We only need two days, so July 6th

17   and July 8th.  If you want to start on June 8th in the

18   afternoon and -- it doesn't seem -- I think July 6th and

19   July 8th.

20   MR. FENDRICK:  Judge, can I just ask what day of the

21   week the 6th is?

22   THE COURT:  It's a Tuesday.  We're off on Monday,

23   July --

24   MR. FENDRICK:  Yeah.  My sister turns 50 on the 4th.

25   THE COURT:  My condolences.

1      MR. FENDRICK:  I just want to make sure I can drive

2      back -- I just want to make sure I can drive back on the

3      5th.  I can do that from Fort Walton to come back so I can

4      be at the hearing in the 6th.  Okay.

5          THE COURT:  Yeah.

6          COURTROOM DEPUTY:  So it's confirmation, FEH?

7          THE COURT:  Yep.  So, let's see what we'll do.  I'll

8      enter an order that says that this came on for a status

9      conference concerning the status of the Confirmation

10     Order, the parties are in disagreement, it appears that

11     there was not a meeting of the minds, and that by separate

12     order, the Court will reschedule the remainder of the

13     contested confirmation hearing.

14         MR. FENDRICK:  And, Judge, does that mean the

15     confirmation hearing that was on that Plan that was filed

16     the Monday that week, correct, the one that we were

17     proceeding under at the time?

18         THE COURT:  Yeah.  Whatever it was that we were --

19         COURTROOM DEPUTY:  It was the joint third and

20     restated or something, I think --

21         MR. FENDRICK:  It was filed April 26th.

22         THE COURT:  I don't remember.

23         MR. FENDRICK:  It was an April 26th filing.  That was

24     the last amendment to it.

25         MR. WATSON:  I think it was the second.

1        MR. FENDRICK:  Pardon me?

2        MR. WATSON:  I think it's the second.

3        MR. FENDRICK:  Second, okay.

4        THE COURT:  May 2?

5        MR. PETERSON:  It was filed on April 26th.

6        COURTROOM DEPUTY:  April 26th?

7        MR. PETERSON:  The second supplement.

8        THE COURT:  All right.  You said you wanted my

9    wisdom.  My wisdom is you should probably take that

10   sentence.  If there's something in there that is so

11   onerous and so scary to the individual guarantors, let's

12   have it on the table.  If it's just we don't want them to

13   have all the power of how they declare a default and this

14   and that, and this and that, you know, if you're not going

15   to default, you don't need to worry about those things.

16       MR. FENDRICK:  And, Judge --

17       MR. PETERSON:  There are things in the documents that

18   we would be in default in now.  It wouldn't make sense to

19   incorporate all of the other documents --

20       MR. FENDRICK:  That's why we asked --

21       MR. PETERSON:  -- financial covenants, we deem

22   ourselves impaired.  I'm mean, we're clearly in a

23   litigious situation.  I can't have a loan document that

24   has if we deem ourselves impaired you're in default.

25       MR. FENDRICK:  And, Judge, this is the first time

I've heard that.  All I asked was:  Tell me what you don't like about the loan documents.  That could be addressed if I knew what the concern is about.

THE COURT:  I'm looking at this as being a fresh start.  It is a fresh start.  As of confirmation, "new loan," in quotes, and they can't be in default.

MR. FENDRICK:  Right.

THE COURT:  We have new terms.

MR. FENDRICK:  So if what they want to add to this Plan -- because if the document simply says, "Our documents are amended as set forth in the Plan," if there's something they want to add to the Plan that says, "we're not in --" that happens all the time.  We're already in default.  We're in default of some financial covenant, some ratio, tell us.  That's all I've been asking for for ten days.

THE COURT:  Then how do you measure that?  How do you use that going forward?  If you're going to say --

MR. FENDRICK:  Well, I don't know what it is yet.  But we've been pretty creative in this case.

THE COURT:  Well, the financial covenants, if they're being breached right now, how will you ever give effect to them if you say, okay, they're not being breached right now.  What would cause breach?

MR. FENDRICK:  My recollection is they end in 2010 or

1    2011.  My recollection of the ratios and stuff, they're

2    only in effect the first few years of the loan.

3         MR. PETERSON:  I don't think there should be any

4    financial covenants, because that --

5         THE COURT:  Okay.  Well, then, maybe that's one thing

6    you excise out.

7         MR. PETERSON:  The issues that have been raised to me

8    and we agreed to accommodate were:  We agree to pay taxes,

9    we agree to keep it insured, and we agree to financial

10   reporting.  We agreed to put that in the Confirmation

11   Order.

12        THE COURT:  Then create new loan documents;

13   modification -- loan modification agreements.

14        MR. FENDRICK:  That's how I'd like to do it, a loan

15   modification.  Leave these in place, leave our recordings

16   and our security interest perfected as of those dates.

17        THE COURT:  Right.

18        MR. FENDRICK:  Which is what we considered the Plan

19   to be, the loan modification.  We considered the Plan to

20   be the modification of the documents.  That's what the

21   language has always said, the intent of every Plan has

22   said that.

23        THE COURT:  Except Mr. Peterson didn't appreciate

24   there were some gotchas in there.

25        MR. FENDRICK:  And that's fine.  I just have --

MR. PETERSON: I never tried to get anyone. I sent redlines of everything. I wasn't trying to hide anything. And then Monday afternoon I get: Well, what about the financial reporting?

Okay, you're right, I forgot about that.

And then it becomes: Well, taxes, insurance.

Okay, okay, we'll do that.

And then they want everything in there.

THE COURT: Well, it's -- because that's what it is. It's a commercial loan that should have just about everything. Now, the financial covenants, you know, there needs to be a tweak for that because, you're right, they're in violation of those right now, and you have to say that that Paragraph 2.1.1 is not a part of it, or something.

MR. FENDRICK: Correct. Correct.

THE COURT: You just excise that one out. Either sign new documents or get rid of the stuff that you don't like that's in there, after negotiation, or you have to cram it down them on a record where you say these are the terms of the loan, and see if they buy it or not.

MR. FENDRICK: Well, now they get to amend the Plan that says our loan documents aren't -- because right now the Plan we're going under says our loan documents are amended as set forth under the Plan. I mean, we're going

1 to go back to confirmation on a Plan that has the language

2 I like.  That's what's so silly about this.

3   THE COURT:  Well --

4   MR. PETERSON:  I'm not sure that should be the Plan

5 we're going under.  I mean, we filed a Third Amended Plan.

6   THE COURT:  When?

7   MR. PETERSON:  After Mr. Fendrick signed off on it,

8 we filed it, and a Confirmation Order.

9   THE COURT:  Okay.  Well, then --

10   MR. PETERSON:  That's the Plan that should be --

11   THE COURT:  That's the Plan that's going forward.

12   MR. FENDRICK:  So I get to file new objections to

13 that, then?

14   THE COURT:  Yes.

15   MR. FENDRICK:  Thank you.

16   COURTROOM DEPUTY:  That's the April 26th Plan?

17   MR. FENDRICK:  No.  It's going to be the --

18   THE COURT:  No.

19   MR. FENDRICK:  -- April the 30th or 29th.

20   THE COURT:  Okay.  So I'll do that order.  If there's

21 no meeting of the minds on 100 percent of the terms, then

22 there's no meeting of the minds.  From now on I'm going to

23 have a commercial loan checklist up here for every Chapter

24 11 where a loan is modified.

25   MR. FENDRICK:  That's not a bad idea.  Usually -- I

1    mean, as you know, it all happened after the afternoon of

2    the first day of trial back on the next day.

3         THE COURT:  Right.

4         MR. FENDRICK:  And those -- I was reminded -- I

5    thought about us when you were still in practice, we had

6    that case in front of Judge Williamson, Shuker.  I had to

7    go back a year later.  We all settled out in the hallway.

8    Then his client didn't pay something.  I thought that's

9    what this reminded me of.  I thought I can't do that

10   again.  I want to make sure we're absolutely clear so a

11   year from now someone says:  You don't have a loan

12   document, or you don't have a security agreement.

13        THE COURT:  Did I raise that?

14        MR. FENDRICK:  I was the one who had to go back in in

15   argument.  It was a hotel or something and we all settled

16   in the hallway.  And so we were all back a year later.

17        THE COURT:  Was it Shuker that raised that?

18        MR. FENDRICK:  Yes.

19        THE COURT:  Of course.  Okay.  That's why I'm

20   thinking, it doesn't sound like something I would raise.

21        MR. FENDRICK:  No, it was Shuker.

22        MR. PETERSON:  Your Honor, in light of this, I'd like

23   to reserve the right to amend the Plan shortly.  I don't

24   know -- at this point, frankly, I don't know whether we

25   want to go with the third or the second.  I need to think

1  through that. I'd reserve the right to amend --

2  THE COURT: Well, you've still got time because we've

3  got the whole month of June, part of May left. The

4  deadlines are seven days before the confirmation hearing

5  is the deadline for objections. There's a 28-day notice

6  period for that. So that's 35 days. We're close.

7  MR. PETERSON: Because the Third Amended Plan calls

8  for large sums of money to be paid by the insiders, and I

9  don't know whether they're going to want to do that now.

10  But -- so I just want to reserve the right to amend.

11  THE COURT: If it fits within the -- if it fits

12  within the time frame and notices, fine. If you need me

13  to shorten something and you file a motion, I can shorten,

14  perhaps, the lead time on the objection to confirmation.

15  And you'll have to call us when it gets in so we can look

16  at conditional approval of the Disclosure Statement,

17  unless the Disclosure Statement isn't going to change.

18  MR. PETERSON: Okay. Are we able to conduct

19  discovery if necessary?

20  THE COURT: Sure. But they've got to know what it is

21  that they're having discovery on.

22  MR. PETERSON: Right.

23  MR. FENDRICK: The Disclosure Statement has the

24  language too, Judge -- I've pointed that out to him --

25  that our loan documents are amended as set forth in the

1    Plan.  I mean, this seems like an awful waste of money for

2    something, as you pointed out.  We're going to have loan

3    documents at the end of the day.  I just -- this seems

4    silly.

5         THE COURT:  I can't just --

6         MR. FENDRICK:  I know, I know you can't.  I know.

7         THE COURT:  -- create a resolution in a vacuum.

8         MR. FENDRICK:  I know, I know.

9         THE COURT:  If I sign the order and I add that

10   sentence, then they're going to appeal it.

11        MR. FENDRICK:  Okay.

12        THE COURT:  You know what?  I'm willing to bet $5 to

13   each of you, we're not going to have a trial on the 6th

14   and the 8th.  But we're going to schedule it and I'm going

15   to get the order out.

16        MR. FENDRICK:  Judge, in the interim, because we

17   thought we resolved it, to we get to go back to our

18   adequate protection payments since they're supposed to be

19   making those?  I mean, they haven't made -- they didn't

20   make April's but we didn't require it because we were

21   resolving.

22        THE COURT:  File a Motion for Relief from Stay.

23        MR. FENDRICK:  No, it's already in the order that

24   they're required to make them, the adequate -- that order

25   was entered.  They've been making them under that order.

1    I just want to reinstate them.  I don't want any

2    misunderstanding during the interim that --

3         THE COURT:  Is there a --

4         MR. FENDRICK:  It reduces the debt.

5         MR. PETERSON:  I don't think there's a -- I don't

6    think there's a requirement of a certain amount.  We've

7    been paying it.  We've been paying, but I don't think

8    there's anything in an order requiring a certain amount

9    that I recall.

10        MR. FENDRICK:  It's actually in every month's use of

11   cash collateral that they filed, the budget includes their

12   payment in it.

13        THE COURT:  Well, whatever it is, if there's an order

14   out there and there's a default provision in there, well,

15   if you can file something, we'll hear it.

16        MR. FENDRICK:  Okay.

17        COURTROOM DEPUTY:  So what FEH order can we send out?

18        THE COURT:  Right now it's going to be on --

19        COURTROOM DEPUTY:  Just confirmation and objections?

20        THE COURT:  Yes.  But it's the Plan that's the -- the

21   most recent iteration of Plan.

22        COURTROOM DEPUTY:  Which was April 30th, and that's

23   the third.

24        THE COURT:  Yes.  And then we'll have to go from

25   there.

1          COURTROOM DEPUTY:  We need to enter that order.

2          THE COURT:  What?

3          COURTROOM DEPUTY:  We need to enter that order.

4          THE COURT:  What order?

5          COURTROOM DEPUTY:  The FEH order.

6          THE COURT:  Right.

7          COURTROOM DEPUTY:  It's -- so we're going on the

8     third?

9          THE COURT:  Yeah.  Yes.  So, then, we'll see you back

10    here on July the 6th, in which case I'll be here to accept

11    my $5 from each of you, or pay you, as the case may be.

12          MR. FENDRICK:  Thank you, Your Honor.

13          THE COURT:  I can take doughnuts in lieu of.  Thank

14    you all.

15          MR. PETERSON:  Thank you, Your Honor.

16               (Hearing concluded at 11:58 a.m.)

17

18

19

20

21

22

23

24

25

## CERTIFICATE OF REPORTER

STATE OF FLORIDA           )

COUNTY OF HILLSBOROUGH      )

       I, MARILYN L. TAYLOR , Official Court Reporter and Notary Public, do hereby certify:

       That the foregoing hearing was reported by me at that time and place therein designated; and that the foregoing pages were transcribed by me and constitute a true and correct copy of the stenomask report.

       I FURTHER CERTIFY that I am not a relative, employee, attorney or counsel of the parties, nor a relative or employee of such attorney or counsel, nor financially interested in the foregoing action.

       BE IT KNOWN that I shall not attest to the accuracy nor content of any other than the original transcription herein set forth, excepting copies that are made by me by whatever means, containing my original signature only.

       WITNESS my hand and seal this 25th day of May 2010, in the City of Tampa, Hillsborough County, Florida.

Marilyn L. Taylor, CVR
Certified Verbatim Reporter
Notary Commission No.DD593730
Expires: October 25, 2010